Maria T. Polhemus, Respondent, *v.* The Fitchburg Railroad Company, Appellant.

Where two or more railroad corporations are consolidated under the act of 1869 (Chap. 917, Laws of 1869), the bonded indebtedness of either, although secured by mortgage upon its property and franchises, attaches to and may be enforced against the new corporation; the excepting of mortgages from the liabilities which, by the terms of the act (§ 5), are made to attach to the new corporation does not also except the bonds or the debt to which the mortgage is a collateral security, and the bond-

holder is not confined, in the collection of his bond, to the enforcement of the security.

The words, "except mortgages," simply confines the property lien created by a mortgage to the property owned prior to the consolidation by the company giving it, and the theory of the act is that the new corporation represents each of the old ones in its claims and liabilities, save as to the liabilities created by mortgage, and as to those the properties acquired by the new corporation remain affected only as they were affected before the consolidation.

Reported below, 50 Hun, 397.

(Argued October 16, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 11, 1888, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John H. Peck* for appellant. The rules for construction of statutes require that language shall have its ordinary or usual force, and that every expression shall be given weight, if possible, without nullifying the purpose of the law. (Potter's Dwarris on Stat. 110; *Schley* v. *Fryer*, 100 N. Y. 75.) The construction of the words " all debts and liabilities * * * except mortgages," to mean " except mortgage debts and liabilities," not only gives to them the full force of their ordinary and customary use, but is in its effect reasonable, operates to promote the purpose of the statute, and is in harmony with other provisions and remedies of law. (Code Civ. Pro. § 1432; *F. Bank* v. *Cowan*, 2 Keyes, 217; *Galer* v. *Brown*, 22 N. Y. 37; *Hale* v. *Tuttle*, 8 Wend. 375.) A right is not impaired by an adjustment of the sequence in which remedies may be pursued. The Consolidation Act does not sequester any property from creditors, and it is not unusual for legislatures and courts to regulate the order of proceedings on secured debts. (Code Civ. Pro. §§ 1628, 1630, 2158; 1 R. S. 749, § 4; *Rice* v. *Haberton*, 63 N. Y. 493; *Cose* v. *Boughton*, 8 Wend. 106.)

*Charles E. Patterson* and *George S. Nichols, Jr.*, for respondent. It is a general principle that where two or more roads are consolidated, unless the contrary be made to clearly appear, the presumption is that the united or consolidated company has all the property and privileges, and is subject to all the obligations and liabilities of each of those out of which it was created. (Morawetz on Corp. § 955; Jones on Railroad Securities, § 415; *Boardman* v. *L. S., etc., R. R. Co.*, 84 N. Y. 157; *C., etc., R. R. Co.* v. *Powell*, 40 Ind. 37; *I., etc., R. R. Co.* v. *Jones*, 29 id. 465; *Arbuckle* v. *I. M. R. Co.*, 81 Ill. 429; *W. U. R. R. Co.* v. *Smith*, 75 id. 500; *C., etc., R. R. Co.* v. *Skidmore*, 69 id. 566; *Thompson* v. *Abbott*, 61 Mo. 177; *M. V. Co.* v. *C., etc., R. R. Co.*, 58 Miss. 846; *H. & T. C. R. R. Co.* v. *Shirley*, 54 Tex. 125; *I. R. R. Co.* v. *Fryer*, 56 id. 609; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514.) As the words in the statute, "except mortgages," are plain of understanding, they do not require any interpretation. (*McCluskey* v. *Cromwell*, 2 N. Y. 601, 604; *Jackson* v. *Lewis*, 11 Johns. 475; *People* v. *N. Y. C. R. R. Co.*, 13 N. Y. 78; Potter's Dwarris on Stat. 126.) It is not necessary to add anything to the signification of the words in question, to prevent their use being senseless, meaningless, or leading to injustice or absurdity. (1 Swan on Cr. Stat. 327, 328.) If the words "except mortgages" cannot be construed in this sentence in harmony with the intent of the legislature, without giving a strained or unusual meaning to one of the words, a due regard to the contracts of the parties requires that the expansion of meaning should be given to the word "except," and the word "mortgages" be read in its ordinary sense. (*Vilas* v. *Page*, 106 N. Y. 439.) A statute should not be construed to work a mischief, unless required by words of the most express and unequivocal import. (*People* v. *Lambier*, 5 Den. 9; *People* v. *Mallery*, 2 T. & C. 76–80; *Smith* v. *People*, 47 N. Y. 330; *Sprague* v. *Birdsall*, 2 Cow. 419; Maxwell on Inter. Stat. 179; *E. G. R. Co.* v. *Bartholomew*, L. R. [3 Ex. 25; Robinson's El. Law, § 13.) In aid of the construction of statutes, if there be anything ambiguous in the lan-

guage used, it is permissible to look beyond the language itself and to consider the occasion for the enactment, other acts in *pari passu*, matters of general notoriety, and, to some extent, extrinsic circumstances. (*People* v. *Schoonmaker*, 63 Barb. 44; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 56; *People* v. *Suprs. Columbia Co.*, 43 N. Y. 132.) This present action is upon coupons, and not upon the bonds to which they were once attached. Coupons are negotiable securities and may be sued upon by any *bona fide* holder. The plaintiff need not produce the bond to which the coupon was attached, or have any interest in it. (Jones on Railroad Securities, § 337; *City* v. *Lamson*, 9 Wall. 479; *Thompson* v. *Lee County*, 3 id. 327; *Comrs., etc.*, v. *Aspinwall*, 21 How. [U. S.] 539; *Marlor* v. *T. & P. R. R. Co.*, 19 Fed. Rep. 867; *P. & B. R. R. Co.* v. *Johnson*, 64 Penn. St. 127; *McClelland* v. *N. S. R. R. Co.*, 110 N. Y. 469.)

*John B. Gale* for associated bondholders. The consolidation joined the two old companies into one. They survive in, compose, and are, the defendant, and their respective debts are, therefore, its debts. (Mass. Laws of 1885, chap. 297; Laws of 1875, chap. 250; *I. C. & L. R. R. Co.* v. *Jones*, 29 Ind. 465.) If "mortgages" were read as including personal debts that have a mortgage collateral, the act would invade the rights of creditors (expressly "preserved unimpaired") and legalize and encourage such frauds as that attempted in this case; and as to all such debts existing at its passage, the act would be unconstitutional. Therefore, it is not supposable that any such reading was intended. (*Edwards* v. *Kearney*, 96 U. S. 595.)

GRAY, J. The plaintiff, being the holder of bonds of the Troy and Boston Railroad Company, has sued the defendant to recover upon certain due and unpaid interest coupons; upon the ground that, by the consolidation of his company with the Fitchburg Company, the obligation of meeting that liability was assumed by this defendant as the new corporation

by force of the act of consolidation. The defense to the suit is that by the terms of the statute authorizing the consolidation, the defendant is exempted from such a liability. The defense is purely a technical one, and, if allowed to prevail, will have the result, obviously enough, of depriving the various holders of these bonds of valuable property rights, which they had every reason to believe themselves secure in. For the bonds represented an obligation of the Troy and Boston Company to pay upon the principal annually seven per cent interest, until the day of their maturity. As a matter of familiar knowledge to all, such a form of security, for the payment of which, according to its tenor, all the obligor's franchises, properties and revenues were mortgaged, would induce the investment of their moneys by all who desired a well secured corporate obligation bearing the highest legal rate of interest, and having a long period of existence. From the reading of the consolidation plan, as developed by the agreement of the companies, it is plain enough that a leading principle is to alter the obligation represented by these bonds, so that no more than four per cent interest should be paid by the new company on that particular amount of indebtedness.

It is also quite evident from this plan that the stockholders will gain materially by the difference in the interest payments, and will receive from the proceeds of the Troy and Boston property in this consolidation an amount of stock measured by the saving of interest.

The question for us to decide is whether this scheme is sanctioned by the statute and if, under its cover, the bondholders can be deprived of those rights and remedies, which they had previously enjoyed. The consolidation is under and subject to the statute and if it is open to such a construction as the appellant claims, it is difficult to see how a great wrong is not permitted. By an act of the legislature passed in 1869 (Chap. 917), the consolidation of railroads was authorized in certain cases, of which this is one. By its third section, the parties to the agreement of consolidation are created one corporation.

By its fourth section, all the rights, privileges, exemptions and franchises of each corporation and all of its property, real, personal and mixed, its debts and other things in action are vested in the new corporation. Its fifth section reads as follows, viz. :

"§ 5. The rights of all creditors of, and all liens upon, the property of either of said corporations, parties to said agreement and act, shall be preserved unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same, and all debts and liabilities incurred by either of said corporations except mortgages shall thenceforth attach to such new corporation, and be enforced against it and its property to the same extent as if said debts or liabil-, ities had been incurred or contracted by it."

The defense here is based on certain words in that section, and the argument is, in effect, that by the excepting of mortgages from the liabilities, which are made to attach to the new corporation, the bonds themselves, to which the mortgage was a collateral security, are also excepted. This seems to be somewhat startling as a proposition, whether we view it in the light which a usual and correct use of the English language affords, or whether we view it in connection with the legal fact that by the consolidation a transfer of the properties and franchises of the debtor is effected and its earning capacity annulled. The statute, under which the defendant is organized, was passed to authorize the consolidation of companies owning continuous, or connected lines of road. Naturally, it has reference to solvent, or going, concerns, and the force of its authority is in the direction of empowering corporations to do what otherwise they could not do. Its evident object is to enable corporations, so situated, to unite their business means and facilities, when it seems to their mutual advantage. For this statute, which we may presume to have been enacted with a public and liberal end in view, to be construed, nevertheless, in such wise as to legalize the impairment of promises made to creditors, we should find language so unmistakeable and words so explicit as to make such a legislative intent patent. The

natural idea of such a statue, I take it, is that the new corpo-
ration, which springs from the two consolidating corporations,
represents each one, as well in its duties or obligations assumed
to others, as in its rights to enforce performance by others of
their obligations.     The idea of a transfer of properties and
franchises involves, as the correlative idea, an assumption of
those duties and obligations, which were predicated upon the
possession and operation of such properties and franchises and
which gave strength and inducement to corporate promises.
And this idea is, in my opinion, what underlies the legislative
act, and not the one which the appellant seeks to inject into it
and which so strongly shocks the moral sense. . The legislature,
after having vested in the new corporation all the rights, fran-
chises, properties and claims of each party to the consolidation
agreement, proceeds, in this fifth section, to define the position
of the creditors of each.   It preserves their rights and their
liens acquired against or upon the property of the corporation,
and each corporation is continued in existence solely for that
purpose.    It provides that " all debts and liabilities incurred
by either corporation except mortgages shall thenceforth attach
to such new corporation and be enforced against it and its
property to the same extent as if said debts or liabilities had
been incurred or contracted by it."   Omit the words " except
mortgages" and the new corporation would fill the precise
position towards creditors, which each corporation had filled.
What does their insertion accomplish ?   They are ill calculated
to express anything in the legal sense, for mortgages mean the
instruments which charge property with the liability to make
good the debt its owner has contracted.   They may be said to
describe a property liability, but never to describe the principal
debt or promise, which is evidenced by the promissory note, or
bond of the property owner.   They are collateral, or incident to
the debt itself, and where made, as here, to secure the payment
of bonds, they cannot properly be termed the debt or liability
of the obligor, but only the liability charged upon his property.

The argument for the appellant is that we must supply the
sense which is wanting in the words, and should read the clause

as excepting mortgage debts, and that such a reading would exempt the new corporation from any liability upon the bonds of either corporation. I think several considerations militate against this course of reasoning. In the first place, it is a rule in the interpretation of statutes that where a sense is to be supplied to inaccurate or incomplete words in an enactment, that sense which works an injustice should be avoided. In the next place, to except mortgage debts from the debts and liabilities, which are assumed by the new corporation, does not operate to except the corporate liability upon the bonds, unless we are willing to adopt a vulgar, or careless and inexact use of language. In construing language so fraught with important consequences to the rights of persons, we ought to give to the words their precise and natural sense, and not force from them a meaning which strains construction and works a wrong. If the legislature had meant to except the personal debts or obligations, that is, the bonds themselves, it is altogether a more natural supposition that it would have used language importing that much. It would have said " except bonds and mortgages." To refer to popular expressions, we all know that, in speaking of the liabilities of railroad companies, men mention their "bonded debt," and speak of the "bonds outstanding," and they inquire as to the extent of the company's earnings beyond an amount sufficient to meet the interest on its bonds.

But it is possible for us to attach a sense to the words " except mortgages," which is more natural, and avoids our sanctioning the impairment of a corporate obligation. The word " mortgage," taken in its literal sense, and as it would be employed by persons dealing with legal rights, or in affecting legal conditions, means the liability impressed by the company upon the property then owned, or thereafter to be acquired, and to except mortgages means to confine the property lien created by a mortgage to the property theretofore held by the consolidating company. Railroad mortgages are known to contain clauses for extending their lien to future acquisitions of property, or extensions of road, and by their exception, in the clause under consideration, such a consequence would be pre-

vented. We need not consider the legal probability of such a result in this case; although we have been referred to a decree of the Federal Court for the Northern District of Ohio, in *Farmers' L. & T. Co.* v. *Toledo, etc., R. R. Co.,* extending a mortgage lien to property acquired after consolidation by the new company. We need only see a reason for the legislature's inserting the exception. If we read the words simply and naturally, they merely emphasize the understanding that all liens remain as they were before consolidation, neither impaired nor extended. Questions and complications, which might be raised by the ingenuity of minds, as to the status of the mortgages of consolidating companies, are set at rest. It may be surplusage; but that criticism is not infrequently invited by legislation. Except for these words, it is conceded that the consolidated company is liable upon the bonds of the consolidating companies; and because of their insertion it is insisted that the bondholders are remediless to enforce performance of their debtor's obligation, other than by a foreclosure of the mortgage. That would be a most inequitable and harsh rule. It discriminates against the bondholder. The act professes to save the rights of all creditors, and, yet, only the general or unsecured creditors can hold the new company upon the liabilities of the consolidating company. The consolidating companies are solvent, and they are divested of their property and earning capacities in favor of the new company, which thus is enabled, by operation and use of the acquired property, to appropriate its earnings. If it refuses to discharge the full obligation incurred by a consolidating company in its bonds, we are asked to hold that the bondholder is at its mercy and bound to accept what it is willing to pay him, or to foreclose his mortgage. Manifestly, as in this case, that is a process for forcing the bondholder out of his contract, which should not meet with the favor of courts of equity. If, here, the defendant can compel the plaintiff, and those similarly situated, to accept payment of the principal and interest of their bonds, it would be in a position to effect a new loan at a less interest rate, which

means a very great saving and a consequent benefit to the stockholders.

Shall we ascribe to the legislature a purpose to benefit stockholders at the expense of bondholders; practically, to give an advantage to the debtor over his creditor? The inequity and, as well, the iniquity of the thing seem most apparent. Except in bankruptcy courts, the secured creditor is never obliged to resort to his security in the first order, or to surrender it if he wishes to come in and claim with other creditors. The rule in equity imposes no such obligation in cases of solvency, or of insolvency, and yet here, in a case of the transfer of its franchises, properties and choses in action by a solvent corporation to another, for the purpose of operation and use conjointly with those of another corporation, under the authority of a statute which purports to preserve the rights of all creditors and to give them a claim upon the new corporation, it is insisted that the creditor who holds a bond has no rights against the new corporation at all; that that obligation is practically extinguished. The ability of the old corporation to earn money by operation of its chartered franchises is taken away, for it is divested of its properties, and, thereby, the remedy by action and judgment for the interest, where payment has been refused to be made by the company, is rendered futile. I think the legislature never intended such a condition of affairs to result from consolidation under the statute, and that it is doing violence to language and to the rules for the construction of statutes to imply such an intention. The true theory of this act is that each consolidating company survives in the consolidated company, and that it represents each company in its claims and its obligations, but as to the mortgage liabilities the properties acquired remain affected only as they were affected before the consolidation. Whatever the liability created by the mortgage instrument, it shall not be deemed to be extended, or to affect the new company, otherwise than might result from a foreclosure.

In the case of *Vilas* v. *Page* (106 N. Y. 439) Andrews, J., speaking of this statute of consolidation, uses language which,

while the case does not involve the same question as here, is yet significant as to the scope of the act. He says it " saves the rights of all creditors and bondholders of any company embraced in the consolidation authorized by that act." How is that the case, if bondholders may not look to the consolidated company for the fulfillment of the current obligation to pay the interest upon the bonds of the several companies, but must look to the corporation which has practically ceased to exist? The franchises and properties, which, by operation, had furnished the means for meeting the personal liability, have been vested in and are used by the new company. The rights of bondholders are not saved if, by the act of consolidation, the right to enforce the principal debt is extinguished and they are remitted to their collateral security.

I think every legal and every moral consideration demands that we affirm the judgment, with costs.

All concur except Ruger, Ch. J., Earl and Finch, JJ., dissenting.

Judgment affirmed.