THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

**Railroads in forest lands — provisions of Forest, Fish and Game Law, section 228 — application thereof.**

A statute may employ language which is so plain and specific that its meaning cannot be changed by any general principles of interpretation or construction.

A court should not give to a particular provision of a statute a special meaning which is at variance with the general purpose of the statute, unless it is clear that the legislature so intended.

The provisions of section 228 of the Forest, Fish and Game Law (L. 1900, ch. 20; amd. L. 1904, ch. 590), which is entitled "Railroads in forest lands," do not relate exclusively to lands within the forest preserve.

So much of that section as requires that "Every railroad company shall on such part of its road as passes through forest lands or lands subject to fires from any cause, cut and remove from its right of way along such lands at least twice a year all grass, brush and other inflammable materials," relates to lands in counties outside the forest preserve, and is of general application throughout the state.

The prohibitions contained in the remainder of the section are limited to counties containing parts of the forest preserve.

*People* v. *Long Island R. R. Co.*, 126 App. Div. 477, modified.

(Argued November 9, 1908; decided January 12, 1909.)

APPEAL, by permission, from an interlocutory judgment, entered May 7, 1908, upon an order of the Appellate Division of the Supreme Court in the second judicial department,

which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The defendant on and before July 29, 1907, was engaged in operating a railroad within the limits of the town of Smithtown in Suffolk county.

This action was brought to recover a series of penalties alleged to have been incurred by it while so engaged by reason of its failure to comply with certain provisions of section 228 of the Forest, Fish and Game Law (Laws of 1900, chapter 20) which commanded certain precautions designed to prevent the starting and spreading of forest fires.

The several alleged omissions upon which the action is based were, in brief, failures to cut and remove from the appellant's right of way grass, brush and other inflammable materials; to employ at certain seasons sufficient trackmen to promptly put out fires; to provide locomotives with netting of steel or iron wire so constructed as to give the best practicable protection against fire and sparks from the smokestack and adequate devices to prevent the escape of fire from ash pans and furnaces; to refrain from depositing fire coals or ashes on its tracks or right of way; to use all practicable means to put out fires on its own or neighboring lands.

The defendant demurred to the six counts in the complaint seeking respectively to recover penalties on account of the failure to observe some one of these requirements as insufficient in law, on the theory that said section applied only to counties containing territory included in the forest preserve created by the statute referred to and, therefore, did not apply to the town of Smithtown, which was situated within a county not included in said forest preserve.

The following questions were certified :

" 1. Does any part of section 228 of the Forest, Fish and Game Law, as in force at the time of the commencement of this action, July 29, 1907, apply under any circumstances to lands which are wholly within the limits of the town of Smithtown, Suffolk county, New York ?

" 2. Do the words ' forest lands or lands subject to fires from

any cause,' in the first sentence of such section 228, refer, under any circumstances, to any lands which are wholly within the limits of the said town of Smithtown ?

" 3. Does the requirement in the second sentence of said section 228 as to the employment ' of sufficient trackmen to promptly put out fires on railroad rights of way ' apply, under any circumstances, to that part of a railroad which lies wholly within the limits of said town of Smithtown ?

" 4. Was the requirement in the second sentence of said section 228, to ' provide locomotives thereon with a netting of steel or iron wire so constructed as to give the best practical protection against the escape of fire and sparks from the smokestacks thereof,' apply, under any circumstances, to that part of a railroad which lies wholly within the limits of said town of Smithtown ?

" 5. Does the requirement in the second sentence of said section 228 as to the employment of ' adequate devices to prevent escape of fire from ashpans and furnaces which shall be used on such locomotives ' apply, under any circumstances, to that part of a railroad which lies wholly within the limits of said town of Smithtown ?

" 6. Does the requirement in the fourth sentence of said section 228, that ' no railroad company or employee thereof shall deposit fire coals or ashes on its track or right of way near such lands,' apply, under any circumstances, to that part of a railroad which lies wholly within the limits of said town of Smithtown ?

" 7. Does the requirement of the fifth sentence of said section 228, ' in case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out,' apply, under any circumstances, to that part of a railroad lying wholly within said town of Smithtown ? "

*James W. Treadwell* and *Joseph F. Keany* for appellant. The first two questions propounded by the Appellate Division should be answered in the negative. The dominating purpose of the legislature in the enactment of what is known as the

"Forest, Fish and Game Law" was to protect specified public property, viz.: The forest preserve and state parks and reservations, and lands to be added thereto. (*People* v. *Allen*, 20 Misc. Rep. 120; *People* v. *A. R. Co.*, 160 N. Y. 225; *People* v. *Richards*, 108 N. Y. 137; 1 Suth. on Stat. Const. [2d ed.] 916, § 490.) The certified questions Nos. 3–7 should also be answered in the negative. That is to say, the demurrers to the separate causes of action succeeding the first were well taken, irrespective of the questions above discussed. (*Health Dept.* v. *Knoll*, 70 N. Y. 530; 1 Suth. on Stat. Const. [2d ed.] 801, § 412.)

*Charles M. Stafford* for respondents. The second question should be answered in the affirmative. (L. 1900, ch. 20, §§ 228, 230.) The third question should be answered in the affirmative. (*Blashko* v. *Wurster*, 156 N. Y. 437; *Matter of N. Y. & B. Bridge*, 72 N. Y. 527; *State Bd. of Pharmacy* v. *Gasau*, 52 Misc. Rep. 490.)

HISCOCK, J. The question between the parties to this action is whether various provisions of section 228 of the Forest, Fish and Game Law designed to prevent forest fires from the operation of railroads are applicable to counties not containing land included in the forest preserve as created by section 216 of said act. The complaint sufficiently alleged failure by appellant to comply with six of the provisions of said section, but these failures are alleged to have occurred in a town of a county outside the forest preserve. Therefore, concededly if the section is not applicable to the state at large no cause of action has been set forth.

Said section reads in part as follows :

"Railroads in forest lands.— Every railroad company shall on such part of its road as passes through forest lands or lands subject to fires from any cause, cut and remove from its right of way along such lands at least twice a year, all grass, brush and other imflammable materials. Where the railroad runs through forest lands in counties containing

part of the forest preserve, it shall so cut and remove the same from its right of way whenever required by the commissioner; employ in seasons of drought and before vegetation has revived in the spring, sufficient trackmen to promptly put out fires on its right of way; provide locomotives thereon with netting of steel or iron wire so constructed as to give the best practicable protection against the escape of fire and sparks from the smokestacks thereof and adequate devices to prevent the escape of fire from ash pans and furnaces which shall be used on such locomotives. The railroad commission must upon the request of the forest, fish and game commissioner, and on notice to the railroad company or companies affected, require any railroad company having a railroad running through forest lands in counties containing parts of the forest preserve, to adopt such devices and precautions against setting fire upon its line in such forest lands as the public interest requires. No railroad company or employee thereof shall deposit fire coals or ashes on its track or right of way near such lands. In case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out." (L. 1900, ch. 20, sec. 228, as amd. L. 1904, ch. 590.)

We do not think that an uniform answer can be given in respect to the application of the various provisions which we have quoted to counties outside of the forest preserve, and, therefore, we shall be compelled to separate said provisions in our consideration, taking up first the one requiring every railroad "on such part of its road as passes through forest lands or lands subject to fire from any cause (to) cut and remove from its right of way along said lands at least twice a year, all grass, brush, inflammable material," etc.

The counsel for the appellant urges certain general considerations which he says should lead us to interpret this provision as applicable only to counties containing land in the forest preserve, even though the language on its face and by itself seems to import a general application throughout the state. It is said that the dominating purpose of the legislature in the enact-

ment of that branch of the statute including section 228 was to create and protect the forest preserve and various state parks and reservations, and reference is made to very many important provisions which are limited to that purpose. It is then urged that we should construe all of the provisions of the act, including those in section 228, with reference to this main purpose and limit their application to those portions of the state which are marked out in connection with the preserve.

We are unable to accept this argument in its entirety. There can be no question that one very important object of this legislation was to accomplish the purpose suggested by counsel, and most of the provisions of the act are limited in their application to such purpose. But we think that the legislature went beyond this, and that there are scattered throughout the statute, perhaps in a somewhat disconnected and unsystematic manner, various provisions which relate to the general subject of forest preservation throughout the state, and which, therefore, aid the conclusion that certain provisions in section 228 are thus to be applied. We shall refer to some of these.

Section 220, relating to the powers of the commission, after various provisions clearly referring to the forest preserve and state parks, contains other provisions looking to the prevention of forest fires and to the supply of information with reference to the care and renewal of private wood lands which are not thus limited in their application. Section 225, after providing for the appointment of fire wardens in towns "having lands which are part of the forest preserve, and * * * lands which would become part of the forest preserve if acquired by the state," provides that "in every other town" the supervisor shall be fire warden. Section 230 imposes a criminal liability on a person "who wilfully or negligently sets fire to waste or forest lands of the state or of a private person, or who suffers a fire on his own lands to extend therefrom or to state lands." And other provisions might be cited demonstrating that it will not be an isolated

case of general application if we interpret provisions of section 228 as relating to lands outside counties in the forest preserve.

It is further to be borne in mind that a statute may employ language which is so plain and specific that its meaning may not be changed by any general principles of interpretation or construction.

Coming then to the consideration of the specific provision of section 228 which we have first taken up, we think it plainly relates to lands in counties outside of the forest preserve and that no argument is to be drawn from the rest of the statute which weighs against any such interpretation. As we have seen, it relates to "forest lands or lands subject to fires from any cause." Not only is there no restriction of application in the clause itself, but as if to make its general application throughout the state the more marked, the next sentence provides that where the railroad runs through forest lands in counties "containing part of the forest preserve," it shall cut and remove grass and brush not as provided in the first sentence, "twice a year," but "whenever required by the Commissioner." We do not see how it is possible to escape the conclusion that the legislature intended to and did distinguish and discriminate in these two consecutive provisions between the care of lands situated in counties without and those situated within the forest preserve and did intend to require the observance of what might prove the less burdensome precautions throughout the entire state. It was perhaps not unnatural that there should be incorporated into the statute at this point a provision regarding the cutting of grass and brush by railroads throughout the state, since such provision requires little more than was theretofore exacted under the provisions of the Railroad Law. (Section 52.)

We next pass to the consideration of the other provisions of section 228, relating to the employment of trackmen and the employment of devices to prevent the escape of fire and sparks and the deposit of fire coals or ashes and putting out fires, which have already been referred to. We think that

the counsel for the appellant is right in his contention that these provisions are limited to railroads running through forest lands in counties containing part of the forest preserve. All of them except two, to which further reference will be made, are preceded in the same sentence by the condition precedent that "where a railroad runs through forest lands in counties containing part of the forest preserve," it shall employ trackmen, shall provide its locomotives with netting so constructed as to prevent the escape of fire and sparks from the smokestack, and adequate devices to prevent the escape of fire from ash pans, etc., and the limitation of their application is thus made too clear to admit of discussion.

In the next provision under consideration, and which prohibits the deposit of fire coals or ashes on a railroad track or right of way, we find that the prohibition is limited to a right of way near "such lands," the words "such lands" referring to the preceding provisions of the section dealing with the forest preserve, and, therefore, by this reference this provision is likewise limited to counties contained in the forest preserve.

The next provision commands that "In case of fire on its own or neighboring lands the railroad company shall use all practicable means to put it out."

This clause is not by its own terms specifically restricted to railroads running through counties containing part of the forest preserve and yet we think that it should be construed as thus limited.

As already pointed out, the general scope of the statute of which it is a part relates to the forest preserve and parks and matters connected therewith as distinguished from forest lands throughout the state, and we should not give to a particular provision a special meaning at variance with the general purpose of the statute unless it is clear that the legislature so intended.

It may be urged that section 228, both originally and as amended in 1904, is entitled generally "Railroads in Forest Lands," but when we turn to the title of Article 13, of which

this section is a part, we find that it is entitled "Forest and Public Parks," and then the various sections of the article almost uniformly relate to forests as contained in the forest preserve and to various state parks and reservations, and they immediately and naturally create the impression that that is the general subject under treatment. And the title of the amending act (Laws 1904, chap. 590) relied on to sustain a construction different from that here taken, is not simply and generally in relation to "the prevention of forest fires," but it reads "An act to amend the forest, fish and game law, in relation to the prevention of forest fires," and the statute so amended so far as it relates to forests at all relates mainly to those in the preserve and parks. So it does not seem as if there were anything in the title to raise a presumption in favor of the broader application contended for.

But it may be said that in section 228, as originally enacted, all of the various provisions with which we are concerned applied generally throughout the state, and that the amending act of 1904 restricted the application of several of them to the forest preserve, and did not so restrict the one now being considered, and, therefore, it must be presumed that the legislature intended it to have a general application. If the premises were correct the conclusion doubtless would follow, but it seems as though the legislature fairly must have intended and understood that this disputed clause should and did come within the effect of the amendments for a limited application. We are agreed that it amended several provisions immediately preceding this one and relating to the same general subject, so as to limit their application to the preserve. The last one of these reads: "No railroad company or employee thereof shall deposit fire coals or ashes on its track or right of way near such lands." This concededly relates to the forest preserve. Now when the legislature provided in the very next sentence (the clause in question) that "In case of fire on its own or neighboring lands," the railroad should use all practicable means to put it out, is it reasonable to suppose that it intended absolutely to depart from the subject then being con-

sidered and legislate concerning a fire several hundred miles away from the lands and fires about which it had just been speaking? It seems not. And it is still more difficult to believe this in view of the fact that the succeeding sentence likewise treats of conditions in the preserve. That succeeding sentence requires railroad employees to give report " of fires in fences or other material along or near the right of way of the railroad in *such lands.*" It is said that " such lands " are not those referred to in the prior provisions restricted to the forest preserve, but that this sentence, like the preceding one under discussion, is of general application. The words " such lands " certainly refer to something which precedes. If they do not refer to the forest preserve lands in the limited provisions, then they refer to the railroad's " own or neighboring lands " in the disputed clause. And if the latter is the case, then we have it that this last provision relates to fires " near the right-of-way of the railroads in such lands," viz., a right of way " on its own or *neighboring lands.*"

Taking into account all of these considerations, it seems as though the legislature could not have intended completely to disassociate this single provision from those which surround it, and in one isolated sentence legislate concerning an entirely new subject, but that it regarded the amendments which it made as sufficient to control this provision in connection with related ones and to limit its application to the same subject covered by them.

But there is another consideration which should lead us to adopt the interpretation here urged. If this provision is disconnected from the others and complete in itself then it specifically, under substantial penalties, requires a railroad company at all times and without compensation to " use all practicable means " to put out any fire, not only on its own but on " neighboring lands." It may be urged with much force that this obligation has no limitation if we consider this provision by itself and disconnected from the others, and that, therefore, it requires the company to put out fires on the lands of

others which have not spread from its own premises and which have not been caused by any act of its employees and for which it is not in the slightest degree responsible. It may well be doubted whether the legislature could thus compel a railroad company to use "all practicable means" in fighting all the fires which may originate in the neighborhood of its road from any cause whatsoever entirely disconnected with its operation of such road.

This constitutional argument for condemning the provision fairly may be avoided by construing the provision as connected with and related to the other surrounding ones. For instance, the preceding clause prohibits the deposit by a railroad company of "fire coals or ashes on its tracks or right-of-way near such (forest preserve) lands." If we interpret the next and disputed clause as connected and continuing the treatment of the same subject, we reasonably may say that when the legislature requires the railroad company to put out fires "on its own or neighboring lands" it refers to fires originating through its fault and from its failure to observe the precautions which have been enjoined upon it. Thus construed and limited the statute would avoid the difficulties above pointed out.

In accordance with these views the interlocutory judgment appealed from should be affirmed in so far as it affirms the interlocutory judgment overruling defendant's demurrer to plaintiff's first cause [of action, and overruled in so far as it affirms the interlocutory judgment overruling defendant's demurrer to the other causes of action, and the demurrer to them sustained, with leave to each party to file and serve an amended pleading, without costs to either party, and of the questions certified to us those numbered one and two should be answered in the affirmative, and the remaining questions should be answered in the negative.

Vann, J. The sufficiency of each of the six counts in the complaint was challenged by a demurrer, which was overruled by the concurrent action of the courts below, one of the

justices of the Appellate Division dissenting. I agree with Judge HISCOCK that the first count sets forth a good cause of action and that counts two to five inclusive do not, but I dissent from his conclusion that the sixth is bad.

The question depends on the meaning of section 228 of the Forest, Fish and Game Law, as amended in 1904 by an act which stated in its title that the purpose of the amendment was "the prevention of forest fires." (L. 1900, ch. 20; L. 1904, ch. 590.) What I have to say will be better understood if the entire section is set forth. It is as follows: "§ 228. Railroads in forest lands.— Every railroad company shall on such part of its road as passes through forest lands or lands subject to fires from any cause, cut and remove from its right of way along such lands at least twice a year, all grass, brush and other inflammable materials. Where the railroad runs through forest lands in counties containing part of the forest preserve, it shall so cut and remove the same from its right of way whenever required by the commissioner; employ in seasons of drought and before vegetation has revived in the spring, sufficient trackmen to promptly put out fires on its right of way; provide locomotives thereon with netting of steel or iron wire so constructed as to give the best practicable protection against the escape of fire and sparks from the smokestacks thereof and adequate devices to prevent the escape of fire from ash pans and furnaces which shall be used on such locomotives. The railroad commission must upon the request of the forest, fish and game commissioner, and on notice to the railroad company or companies affected, require any railroad company having a railroad running through forest lands in counties containing parts of the forest preserve, to adopt such devices and precautions against setting fire upon its line in such forest lands as the public interest requires. No railroad company or employee thereof shall deposit fire coals or ashes on its track or right of way near such lands. In case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out. Engineers, conductors or trainmen discovering or knowing of fires in

fences or other material along or near the right of way of the railroad in such lands, shall report the same at the first station to the station agent, and such station agent shall forthwith notify the nearest fire warden or game protector thereof, and use all necessary means to extinguish the same.  Any railroad company failing or neglecting to comply with any of the provisions of this section, or any order of the railroad commission made pursuant to the provisions of this section, shall be liable to a penalty of one hundred dollars for each day that it continues a violation thereof, and any officer or employee of a railroad company violating any provision of this section or neglecting to comply with any requirement of the railroad commission duly ordered, shall be liable to a penalty of one hundred dollars for every such violation.  The supreme court may on notice to the persons or corporations affected enforce compliance with any such order of the railroad commission."

The first count of the complaint rests on the first sentence of this section, which was not changed by the amendment of 1904.  Counts two to five inclusive rest on the next three sentences which were so changed by the amendment as to limit their application, which had been general, to railroads running " through forest lands in counties containing part of the forest preserve."  Then follows the sentence in question, which was not changed by the amendment, and which commands that " In case of fire on its own or neighboring lands, the railroad company shall use all practicable means to put it out."  The next sentence was not changed by the amendment, while that following was amplified somewhat and the last is wholly new.

Before the amendment the entire section applied to the entire state.  After the amendment the three sentences following the first were limited to railroads in the forest preserve, but there is nothing to show that the legislature intended to thus limit the remainder of the section.  We cannot hold that it is so limited without inserting words that the legislature did not use.  The object of the section, as shown by its

title, as well as by the title of the amending act, is to protect forest lands from fire, whether they are in the forest preserve or not.   Hence the general commands are of universal application, while the limitations are only such as are expressly mentioned in order to distinguish the specific from the general.   The statute as a whole applies to the entire state and the limitations, which are exceptions to the general rule, are presumed to be specified.   This is well illustrated by section 220 relating to the powers of the commission, some of which are specifically limited to the forest preserve, and to the public parks which are the state's own property, while the rest obviously and necessarily apply to the whole state.   Thus after intrusting to the commission the care of the forest preserve and the public parks, the section continues: "4. Make rules for the prevention of forest fires and cause the same to be posted in all proper places throughout the state.   5. Prepare and distribute tracts giving information on the care and renewal of private woodlands, and with the approval of the superintendent of public instruction and the regents of the university, supply to schools, academies and colleges the means of instruction in forestry."

The main argument for adding a limitation to the sentence in question is that it is immediately preceded and followed by provisions which apply only to the forest preserve.   It is so preceded, but I fail to see that it is thus followed.   Indeed, if the next sentence in referring to "such lands" means only lands in the forest preserve, the legislature intended to require engineers and trainmen to report fires in the preserve only, leaving the rest of the state unprotected in this respect. Moreover, when the legislature directs "the railroad company" to put out fires "on its own or neighboring lands" I see no reason for holding that it refers only to railroads in the forest preserve, for apparently it refers to any railroad owning lands on which a fire occurs, or owning lands adjacent to those on which a fire occurs.   Clearly, it had this meaning prior to the amendment, and the amendment did not touch it, either by specific mention or by the use of "such"

or any other word referring to the roads mentioned in the amended sentences.

When the section, as it now stands, is read in connection with itself as it stood before it was amended and in the light of the title of the amending act, I think the sentence in question means precisely what it meant before, and that it is unlimited in its application. The suggestion that if thus construed the command of the legislature violates the Constitution because it requires railroads to furnish, without compensation, a system of fire protection for the inhabitants of the district, does not impress me as formidable. When reasonably construed, " neighboring lands " mean such only as are close to those of the railroad, and fires on those lands mean such as were presumptively started by the railroad thereon or on its own lands and are near enough to threaten danger. The power to compel an act includes power to require performance of such incidental acts as are necessary to make the exercise of the power effectual. Protection of lands bordering on those of a railroad is merely incidental to the protection of its own lands by the road. As a fire in the house of my next-door neighbor must be put out in order to save my own house, so when a fire on neighboring lands threatens to spread to those of the railroad, the latter can be effectively protected only by putting that fire out.

I think that the sixth count sets forth a good cause of action.

Cullen, Ch. J., Gray, Haight and Chase, JJ., concur with Hiscock, J., and Willard Bartlett, J., concurs in result; Vann, J., reads dissenting opinion as to last cause of action.

Judgment and order accordingly.