## IRVING BANK–COLUMBIA TRUST CO. v. NEW YORK RYS. CO. et al.

(District Court, S. D. New York. April 24, 1923.)

1. **Railroads ⬠144(1)—Legislature must be assumed to have realized complications from enactment of consolidation statute.**

It must be assumed as a matter of law that the Legislature in enacting Railroad Law N. Y. 1890, § 73, relating to the rights of creditors and mortgages against consolidated companies, realized the possibility of the constitutional and financial complications which would result from any attempt to make the existing mortgages of the constituent companies a lien upon all of the property of the consolidated company.

2. **Constitutional law ⬠48—Court will hesitate to impute to Legislature impracticable and detrimental purposes.**

A court should hesitate to impute to the Legislature an intent in enacting a statute to produce an impracticable and detrimental result.

3. **Railroads ⬠144(1)—"Debt" and "liability" in consolidation statute do not include liens.**

Within Railroad Law N. Y. 1890, § 73, providing that all debts and liabilities incurred by the constituent corporations shall attach to the new corporation and be enforced against it and its property, "debt" means what one owes to another, and "liability" ordinarily means an obligation which may or may not ripen into a debt; but neither term includes the lien of a mortgage securing a debt or liability, in view of the prior provision of the statute preserving liens upon the property of consolidated corporations, and therefore a mortgage previously executed by one of the consolidating corporations cannot be foreclosed against all of the property of the consolidated corporation even though it contains a clause that it shall cover all after-acquired property [citing Words and Phrases, Second Series, "Liability"].

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

4. **Railroads ⬠144(1)—Omission of exception from prior statute held not to indicate change of meaning.**

The fact that in enacting Railroad Law N. Y. 1890, § 73, providing that debts and liabilities of consolidated corporations should be enforced against the constituent corporations, the words "except mortgages," which occurred in the previous act after the word "liabilities," was omitted, does not indicate an intention to include mortgages within debts and liabilities, but was merely an instance of the commissioners' attempt, as stated in their report, to omit surplusage, especially in view of the fact that at the time of the enactment the Legislature must be assumed to have known that two lower courts had differed as to whether the exception included bonds secured by mortgage.

In Equity. Suit by the Irving Bank-Columbia Trust Company, as trustee, against the New York Railways Company and others, for

foreclosure of a mortgage. Decree directed denying right to foreclose on all property of the consolidated corporation.

Decree affirmed 292 Fed. 440.

The suit is to foreclose a railroad mortgage and the cause is now ready for final decree. The question presented involves the construction of section 73 of the New York Railroad Law of 1890 (Laws of 1890, chapter 565), which reads as follows:

"Sec. 73. *Creditors' Rights Not to be Impaired.*—The rights of all creditors of, and all liens upon the property of, either of such corporations, parties to such agreement and act, shall be preserved unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same, and all debts and liabilities incurred by either of such corporations shall thenceforth attach to such new corporation, and be enforced against it and its property to the same extent as if incurred or contracted by it. * * *"

The facts, for the purposes of this discussion, are not in dispute, and thus the court is called upon to decide solely a question of law.

Davies, Auerbach & Cornell, of New York City (Edward Cornell, Frank D. Pavey, Martin A. Schenck, and Louis F. Schwartz, Jr., all of New York City, of counsel), for plaintiff.

Larkin, Rathbone & Perry, of New York City (Henry V. Poor and James L. Banks, Jr., both of New York City, of counsel), for Central Union Trust Co. of New York.

Stetson, Jennings & Russell, of New York City (Edwin S. S. Sunderland and Morris Hadley, both of New York City, of counsel), for defendant Guaranty Trust Co. of New York.

Geller, Rolston & Blanc, of New York City (Mansfield Ferry and Philip M. Payne, both of New York City, of counsel), for Farmers' Loan & Trust Co.

Chadbourne, Hunt & Jaeckel, of New York City (William M. Chadbourne and Cyrus F. Smythe, both of New York City, of counsel), for contract creditors' committee.

MAYER, Circuit Judge (after stating the facts as above). The Columbus & Ninth Avenue Railroad Company (hereinafter called Columbus Co.), a New York corporation, executed its first mortgage dated August 24, 1893, to New York Guaranty & Indemnity Company, as trustee, to secure the payment of bonds in the total amount of $3,000,-000, maturing September 1, 1993.

Plaintiff is the successor trustee in place of New York Guaranty & Indemnity Company.

The granting clause of this mortgage conveys:

"All and singular the railroads and railroad property, real estate and chattels real of every name and nature owned or constructed or *hereafter owned, constructed or acquired by the party of the first part,* in the city of New York. Together with the privileges, rights and franchises now owned by the railroad company *or which shall hereafter be owned or acquired by it,* and all lands and leasehold interests now *or hereafter owned or acquired* for railways, depots or stations within the said city, and all buildings erected or *which hereafter may be erected thereon,* and all the locomotives, tenders, cars, carriages, tools, chattels, machinery, and equipment now owned *or hereafter to be owned by the railroad company* or in any way belonging or appertaining to the railroad company, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and

profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity of the railroad company of, in and to the same and every part and parcel thereof, with the appurtenances." (Italics mine.)

Article 11 provides, in part:

"The several covenants, premises and agreements by the railroad company herein contained shall be binding as well upon its successors and assigns."

On December 12, 1893, three railroad corporations—(1) South Ferry R. R. Co.; (2) Broadway Ry. Co.; and (3) Houston, West Street & Pavonia Ferry R. R. Co.—were consolidated, and the new consolidated corporation was called Metropolitan Street Railway Company—hereinafter called Met. Co. No. 1. On May 28, 1894, Metropolitan Crosstown Railway Company and Lexington Avenue & Pavonia Ferry Railway Company were consolidated with Met. Co. No. 1 under the name of Metropolitan Street Railway Company—hereinafter called Met. Co. No. 2. On November 12, 1895, Columbus Co. and Met. Co. No. 2 were consolidated under the name of Metropolitan Street Railway Company—hereinafter called Met. Co. No. 3.

After this consolidation, Met. Co. No. 3 executed two mortgages, the first to the Guaranty Trust Company of New York, dated February 1, 1897, and the second to the Morton Trust Company, dated April 1, 1902. These mortgages were later foreclosed, under decrees of the Circuit Court of the United States for the Southern District of New York on April 6, 1910, and on May 31, 1910, all the property and franchises of Met. Co. No. 3 were sold to a reorganization committee under a reorganization plan which provided for the transfer and delivery of the property and franchises to a new company. The New York Railways Company was formed under this plan and took over the properties. It thereafter executed two mortgages, the proceeds of which were used to retire the underlying bonds of the two above-mentioned mortgages of Met. Co. No. 3. These two new mortgages of the New York Railways Company were: (a) The first real estate and refunding mortgage, dated January 1, 1912, to Guaranty Trust Company of New York, as trustee; and (b) the adjustment mortgage of the same date, to Farmers' Loan & Trust Company, as trustee, which mortgage is subject to the prior lien of the first real estate and refunding mortgage.

These consolidations (and a note of various mortgages) are conveniently arranged in the chart prepared by Mr. Poor and hereto annexed, as Appendix A. [See end of case.]

The specific claim which is made by plaintiff in paragraph 13 of its complaint is that upon the above-mentioned merger and consolidation of Columbus Co. and Met. Co. No. 2 the lien of the Columbus Co. mortgage thereby attached to all the property of Met. Co. No. 3 and also attached to all property thereafter acquired by Met. Co. No. 3 to the same extent as if the mortgage had been contracted by it.

The Legislature in permitting the merger and consolidation of corporations could impose any and all conditions it pleased, so long, of course, as such conditions did not impinge upon constitutional rights.

When, therefore, Met. Co. No. 3 was formed, the lien, for instance,

of the South Ferry R. R. Co. mortgage could not be disturbed by the Columbus Co. mortgage. Had the Legislature attempted to place the Columbus Co. mortgage on an equality with the South Ferry mortgage, obviously, such an enactment would have been unconstitutional. If the South Ferry mortgage had an after-acquired property clause, then plainly the Legislature had no power to impose any condition precedent, contemporaneous with or subsequent to consolidation which in any manner would impair the integrity of the contract expressed in the South Ferry mortgage or, in other words, any condition which would diminish the lien of that mortgage. If, then, it were to be held that the lien of Columbus Co. mortgage attached, by virtue of the statute, to all property of Met. Co. No. 3, at date of consolidation and all property thereafter acquired, infinite complications are at once suggested of which the following are only a few illustrations: Is the lien of South Ferry mortgage subsequent to the lien of Columbus Co. mortgage on the property mortgaged by Lexington Ave. Co., or are they on a parity? What, similarly, is the status of the Lexington Ave. mortgage? Suppose on the same day Company A. executed a mortgage on lot No. 1, Company B. on lot No. 2, and Company C. on lot No. 3; each mortgage having the most comprehensive after-acquired property clause conceivable. Later these three companies consolidate into Company D. Under the statute, is the lien of Company A.'s mortgage on lot No. 3 on a parity with the lien of Company B.'s mortgage on lot No. 3, and are they both subject to the lien of Company C.'s mortgage on lot No. 3? The complications resulting from plaintiff's theory are illustrated in the chart prepared by Mr. Sunderland and Mr. Hadley, hereto annexed as Appendix B.

Notwithstanding the remarks of Landon, J., in Janes v. Fitchburg Railway Co., 50 Hun, 310, at page 312, 3 N. Y. Supp. 165, as to legislative draughtmanship, the fundamental canons of statutory construction must be adhered to in order to keep decisions as orderly as possible.

[1] It must be assumed, as matter of law, that the Legislature realized the possibility of complications of the character suggested, and therefore that, if its intent had been as urged by plaintiff, it would have attempted at least to set out in the statute a constitutional scheme of arraying the liens of mortgages existing at the time of consolidation and of fixing their status in respect of property later acquired by the new consolidated corporation.

[2] It must, of course, be remembered that consolidation is effected by the voluntary acts of two or more corporations, to which acts mortgage lienors are not parties. Neither the Legislature nor the consolidating corporations can affect the rights of mortgage lienors inter sese. If the Legislature can require, as a condition of consolidation, that an existing lien shall spread to all the property of the consolidated corporation, the question then is whether the Legislature so intended. In addition to the complications illustrated supra, it must be remembered that the Legislature is presumed to consider the financial practicability of legislation dealing as this whole statute does, inter alia, with the financial side of railroad corporate consolidation. If it be assumed, for purposes of argument only, that a prior mortgage on Company A.'s

property, with an after-acquired property clause, would, as matter of law, spread only to property acquired in connection with the existing property of Company A., can it be supposed that the Legislature intended that the lien of the Company A. mortgage would extend, by virtue of a statute, to all other property of the consolidated corporation, so that if the consolidated corporation sought to finance further requirements by mortgaging properties other than or in addition to that of Company A. existing at time of consolidation or thereafter acquired, it would find itself confronted by statutory fiat with a prior lien of Company A. on all of its property? Certainly, any such statute would tend to destroy or seriously arrest the ability to finance railroad properties and, in some instances, might make reorganizations impossible. A court should hesitate to impute to the Legislature an intent to produce a result so impracticable and detrimental.

[3] Bearing in mind what has been observed supra, section 73 is clearly and simply drawn. It recognizes three situations:

First. It preserves unimpaired existing (a) rights of creditors and (b) liens upon the property of the consolidating corporations. In this connection, the specific reference to "liens" should be noted, and "liens" may, of course, be of various kinds, mortgage liens, mechanic's liens, and so forth.

Second. It continues corporate existence for the purposes of the first paragraph.

Third. It provides that "all debts and liabilities incurred" by the consolidating corporations shall thenceforth attach to the new corporation and be enforced against it and its property "to the same extent as if incurred or contracted by it. * * * *"

"Debt" means what one owes to another. The amount may be ascertained or not. It may have been established or not. The meaning of the word (in connection with an entirely different statute) has been recently considered in Robertson v. Miller (C. C. A.) 286 Fed. 503. But, whatever "debt" is, it is not the lien of a mortgage. The note or bond expresses the obligation. The mortgage is the pledging of the property or the fastening of a lien upon it, so that if the debt be not paid the property is sold to pay the debt. "Liability" is largely a correlative term, although, ordinarily, it means an obligation which may or may not ripen into a debt. A surety company may be liable on its bond, but until the event happens that liability does not become a debt. For the many ways in which "liability" has been used, see 25 Cyc. 222 et seq. and 3 Words and Phrases, Second Series, Ed. 1914, p. 98 et seq.

Whether a railroad bond is a debt or a liability was the subject of discussion in the Fitchburg Cases, infra. The Supreme Court of California was called upon to construe the meaning of the phrase "incur an indebtedness or liability," as used in the California Constitution. The court said:

"A bond is not an indebtedness or liability—it is only the evidence or representative of an indebtedness; and a mere change in the form of the *evidence* of indebtedness is not the creation of a new indebtedness within the meaning of the Constitution." City of Los Angeles v. Teed, 112 Cal. 319, at page 327, 44 Pac. 580, 582.

It will be noted that the words of the California Constitution are substantially the same as those used in the New York statute under consideration. What was said by the California court is quoted, not for the purpose of necessarily accepting its definition of "liability" as applied to a bond, but in order to point out that what is a "liability" depends greatly on the purpose and intent of the statute, as gathered from its context and as construed in the light of the ordinary meaning of words, whether technical or popular in import. Whatever may be the meaning of "liability," as applied to a bond, certainly no case can be found where liability means lien. In the language of lawyers and laymen, the expression "mortgage debt" is often used and, perhaps, sometimes "mortgage liability"; but these expressions are merely a short way of saying a debt secured by mortgage. To say that "all debts and liabilities incurred" means "all mortgage liens" is to give a new meaning to the words "debts" and "liabilities" both in their technical and popular sense and, in addition, to disregard the principle of noscitur a sociis.

It was, of course, important that debts and liabilities should attach.

If the consolidated corporation operated (as here) a unified system, it might cease to operate the line owned by Company A. and Company A. might have no assets out of which to satisfy its creditors.

Then, again, the assets of the whole system might (and experience has shown would) be difficult of apportionment. Therefore the Legislature safeguarded the rights of creditors and simplified procedure by enabling them to look to the new corporation. In the case of a mortgage, however, there was no such necessity.

The mortgagee had his lien on property, which the consolidation could not take away. If the operated line were abandoned, he nevertheless had the real and personal property covered by his mortgage to which to resort. So far as the mortgage covered property in existence, it would be definite or fairly so. So far as it covered after-acquired property, there was a lien on such real or personal property as the mortgagee could show was after-acquired within the meaning of the mortgage.

Had the Legislature intended to spread the lien, it could either have erected a careful scheme as referred to supra, or, if it had preferred brevity to elaborate statement, it might have provided:

"All debts and liabilities incurred by *and all liens upon the property of* either of such corporations shall thenceforth attach.  *  *  *"

It may be necessary to go no further (People v. Long Island R. R. Co., 194 N. Y. 130, 87 N. E. 79), but for the fact that plaintiff relies greatly on the difference between section 73 and Laws of 1869, c. 917,

[4] Section 5 of that statute reads the same as section 73 of the Railroad Law of 1890 but for the words "except mortgages" inserted as follows: "And all debts and liabilities incurred by either of said corporations *except mortgages* shall thenceforth attach.  *  *  *"

It is contended that when "except mortgages" was eliminated in the 1890 statute, the Legislature intended to include the extension of the lien of existing mortgages.

Reading both statutes as to "debts and liabilities," and using an unsecured note as illustration, it is as if the section of the 1869 statute read, "You, the new consolidated corporation, are to be treated as if you had made this note." Fearing, perhaps, that some one might contend that this might be construed as imposing on the new corporation the assumption of existing mortgages, it was as if the act said, "You, the new consolidated corporation, are not to be treated as if you had made this mortgage."

In statutes and contracts, a safeguarding provision is frequently inserted to the effect that something is not to be construed as thus and so or as including this or that. Such provisions are not thereby understood as admitting nor asserting that what is excepted would otherwise be included. They are usually employed out of abundant caution.

What happened here is that the words "except mortgages" proved puzzling to the New York courts, and thus there was a diversity of opinion between two appellate branches of the Supreme Court.

In Polhemus v. Fitchburg R. Co., 50 Hun, 397, 3 N. Y. Supp. 327 (Second Department), decided December, 1888, plaintiff held ten coupons representing past-due interest on bonds of a railroad corporation which consolidated with the Fitchburg Railroad under the 1869 statute. The question was whether the bonds and coupons were debts or were included under the term "mortgages." The court was not called upon to construe the question at bar. It rightly decided that the bonds and interest coupons were debts.

In Janes v. Fitchburg Ry. Co., supra, decided November, 1888, the same question was oppositely decided by a divided court.

The 1890 statute became law on June 7, 1890.

If the principle of Matter of Cole, 235 N. Y. 48, at page 53, 138 N. E. 733, is involved, it is apparent that the Legislature realized that the words "except mortgages" had caused confusion and a difference of opinion in the courts.

One General Term was unanimous in holding:

"As a matter of settled law in respect of all mortgage securities, the debt is the bond obligation or note of the debtor. It is, indeed, secured by a mortgage, but the debt can be sued as against the debtor without enforcing the mortgage."

The other General Term was divided, but the opinion of Learned, P. J., was not only in harmony with that of the court in the Polhemus Case, but, perhaps, was the most instructive of all the opinions.

But for this controversy as to the meaning of "except mortgages," the 1869 statute had been drawn in simple and legally artistic language. It used words of art familiar to the legal profession, and, doubtless, many consolidations were effected under it. It may well have seemed strange that any contention could be successfully made that railroad bonds, within the purview of the statute, were not debts or liabilities. It appears from the record of the case upon appeal (see consolidation agreement) and is mentioned in Polhemus v. Fitchburg R. R. Co., 123 N. Y. 502, at page 506, 26 N. E. 31, that the scheme of the consolida-

tion plan was, in effect, to alter the obligation of the bonds of the Troy & Boston Company from a 7 per cent. to a 4 per cent. bond. Under the principle of Matter of Cole, supra, it must be presumed that the Legislature knew that such a scheme had been attempted and had, in effect, been held sound by the majority of the General Term of the Third Department. The Legislature when it enacted the Railroad Law of 1890 did not have the benefit of the views of the New York Court of Appeals in the Polhemus Case, supra, which was not argued until October 16, 1890, and not decided until December 2, 1890.

With two General Terms at variance as to the meaning of "except mortgages" and with the attention of the Legislature concentrated on the only question at issue, to wit, the status of interest coupons and hence of railroad mortgage bonds, and with the normal purpose of not permitting any such schemes as were attempted in the Fitchburg consolidation to be thereafter successful, it is more than likely that the words "except mortgages" were omitted for the purpose of setting at rest the contention that "except mortgages" meant "except bonds."

The word "lien" had remained in the 1869 statute for over 20 years. It had then, as it has now, a technical meaning. Whether or not the lien of a mortgage was extended under the statute of 1890 was not an issue in the litigations referred to supra. The courts had indulged in observations as to mortgage liens very much as this court is now doing, but such observations are dicta often employed by a court to explain why it arrives at its conclusion and often merely for purposes of illustration. The 1869 statute in preserving existing liens unimpaired did not extend the liens. If the Legislature of 1890 intended to take so radical a step, fraught with so many complications, it should have expressed its intent in clear and unmistakable language, and such an intent cannot be assigned to it by attributing to "debts" and "liabilities" an unusual meaning which would include the liens of a mortgage by a constituent company executed prior to consolidation and which thus would spread the mortgage over all of the property of the consolidated corporation.

In the very full opinion of Judge Gray, in the Polhemus Case, supra, is found the following significant language, at page 510 of 123 N. Y., at page 33 of 26 N. E.:

"We need only see a reason for the Legislature's inserting the exception. If we read the words simply and naturally, they merely emphasize the understanding that all liens remain as they were before consolidation, neither impaired nor extended. Questions and complications, which might be raised by the ingenuity of minds, as to the status of the mortgages of consolidating companies, are set at rest. It may be surplusage; but that criticism is not infrequently invited by legislation."

It will be noted that Judge Gray states that the words merely "emphasize the understanding that all liens remain as they were before consolidation, neither impaired nor extended." This is but another way of stating that everybody would suppose, in any event, that the liens would so remain; but that the Legislature of 1869 intended to set at rest the "questions and complications, which might be raised by the ingenuity of minds, as to the status of mortgages of consolidating com-

panies." Judge Gray also suggested that these words "except mortgages" might be surplusage, in the sense, heretofore referred to, of inserting a phrase which would avoid misconstruction of the statute.

It will not be profitable to discuss in further detail, in this already extended opinion, various expressions used by Judge Gray. It must be repeated that the sole question with which the New York Court of Appeals was dealing was the status of the bonds and interest coupons and that the question at bar, so far as decision goes, is one of first impression.

The legislation of 1890 was not hasty. On January 30, 1890, there were these two conflicting General Term decisions. On that day, the commissioners to revise the General Laws of the state of New York made their report to the Legislature, including therein a report upon a proposed bill revising "all the statutes of the state having special reference to railroad corporations." The report states:

"The plan of the proposed revision embodies three principal points:  *  *  *
Third. The expurgation of all superfluous words and forms of expression and irrelevant matter of every kind; the correction of the loose verbiage which abounds in our later statutes.  *  *  *  The degree of success which has attended the efforts of the commission in these respects can be best ascertained by a comparison of the revision with the laws which it will supplant, if adopted."

Then followed the proposed bill which, among other things, by section 73, amended section 5 of the Railroad Act of 1869 by omitting the words "except mortgages," together with the acts which the proposed bill was intended to supplant.

The commissioners and the Legislature undoubtedly appreciated, as did Judge Gray later, that the words "except mortgages" were surplusage, which had caused serious confusion, and these words were eliminated in the desire of the commissioners to recommend legislation in accordance with paragraph 3 of their report. Surely, if legislation enacted, as the result of the careful study and recommendations of the commissioners, intended to introduce so novel and revolutionary an extension of mortgage liens, as is here contended for, one might expect that the report of such commissioners would make some mention of such purpose.

While the precise question of statutory construction here involved has not been presented in other courts, the cases show a distinct trend against the extension or spreading of mortgage liens upon consolidation. Wabash, St. Louis & Pacific Ry. Co. v. Ham, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235; Pullman's Palace Car Co. v. Missouri Pacific Ry. Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Compton v. Jessup, 68 Fed. 263, 15 C. C. A. 397; New York Security & Trust Co. v. Louisville, Evansville & St. Louis Consolidated R. R. Co. (C. C.) 102 Fed. 382; Metropolitan Trust Co. v. Chicago & Eastern Illinois R. R. Co., 253 Fed. 868, 165 C. C. A. 348; Commercial Trust Co. v. Chattanooga Ry. & Lt. Co. (D. C.) 281 Fed. 856; Hinchman v. Port Defiance Ry. Co., et al., 14 Wash. 349, 44 Pac. 867.

I am of opinion, therefore, that the contention of plaintiff as to the construction of the statute should not be sustained.

There is also a serious question as to ultra vires suggested in the opinion of Judge (now Mr. Justice) Sanford, in 281 Fed. 856; but, if the views heretofore expressed are sound, discussion of the ultra vires question becomes unnecessary.

It is to be understood that nothing set forth in this opinion is to be construed as holding that the trustees of the Columbus Co. mortgage and of any other mortgages are not entitled to such rights under after-acquired property clauses, or otherwise, as they may have, irrespective of the statute.

Legend: First mortgages are shown by the line nearest any railroad line.

Second and subsequent mortgages are shown by further lines, (the more distant the line, the more subordinate the mortgage).

For example: This shows that during the second consolidation the South Ferry properties were subject: (1) To the So. Ferry mortgage; (2) to the Broadway Surface mortgages; (3) to the Metrop. Crosstown mtg., etc.

(2d. Consol.)
——————
— — — — —
.————.——
= = = = = =
................
=|=|=|=|=|= So. Ferry

MORTGAGES ARE INDICATED THUS:
▭▭▭▭ BROADWAY SURFACE
............ SOUTH FERRY
— — — — METROPOLITAN X° TOWN
———— LEXINGTON AVE.
———— COLUMBUS & NINTH
++++++ RAILROAD LINES

