AARON C. ARNOLD vs. THE TOWN OF MIDDLETOWN.

An assessor called upon a tax-payer for the purpose of making out an assess-
ment list for him, as he had for several years been in the habit of doing, and
asked him if there were any changes in his property from the last year.   The
tax-payer replied that there were not, with a certain exception which he stated.
The assessor then said "You take your oath that that is all, do you?"   To
which the tax-payer replied "Certainly I do."   Held not to be an oath, with-
in the meaning of the law.
By statute the damages for land taken by a railroad company are to be
assessed by appraisers appointed by a judge of the Superior Court, who are
to file their report with the clerk of the court to be recorded, which report is
to have the effect of a judgment, and execution is to issue thereon at the end
of sixty days, unless the railroad company should in the meantime abandon
its claim to the land, in which case its liability for the amount assessed would
cease.   An assessment of damages was thus made in favor of A, and the report
filed in court on the 2d day of September and the money paid by the railroad
company on the 28th of October.   Held that the amount was not taxable as
the property of A on the first day of October.

ASSUMPSIT to recover the amount of a tax claimed to have
been illegally assessed ; brought to the Superior Court in
Middlesex County.   The court made the following finding of
facts.

The plaintiff, on the 25th day of July, 1870, was the owner
of a lot of land, in the city of Middletown, upon which

were two dwelling houses, the basement of one of them being occupied as a store.   This property had for a number of years been assessed to the plaintiff in the assessment lists of the town at $1,800.   On the 25th of July, 1870, the Connecticut Valley Railroad Company, desiring to take a small portion of the property for the purpose of obtaining the right of way for their railroad, which was then in process of construction, and being unable to agree with the plaintiff as to the price to be paid him, made an application to a judge of the Superior Court for the appointment of appraisers, as provided by law in the taking of land for railroad purposes, and on the same day notified the plaintiff to appear if he saw fit, to be heard on the appointment of appraisers.   On the first day of August, 1870, three appraisers were appointed by the judge, who, after hearing the plaintiff upon the question of damages, on the 30th day of August made their report, giving the plaintiff $6,000 as damages, which report was filed in the office of the clerk of Middlesex County, as provided by law, on the 2d day of September, 1870.   The amount of damages, $6,000, was paid to the treasurer of Middlesex County on the 28th day of October, 1870, by the railroad company, for the plaintiff, as provided by law, and was received by the plaintiff from the treasurer on the 7th day of November, 1870.

On the first Monday of October, 1870, Joseph E. Lathrop was duly elected one of the assessors of the town of Middletown, and regularly qualified himself to perform the duties of his office.   The plaintiff made out no list of his property which was subject to taxation on the 1st day of October, 1870, nor did he hand any such list, sworn to, to the said Lathrop, nor to any assessor of the town.   Some time in the month of October, Lathrop as assessor came upon the plaintiff's premises for the purpose of receiving his assessment list, having with him the book in which was entered the list of the plaintiff for the previous year, and with that list before him he inquired of the plaintiff if there were any changes in his taxable property ; the plaintiff replied " No, except in the matter of the railroad, and if that goes I suppose the house

is sold," and also said to the assessor, " You assess my property the same as last year, as I will probably stay here through the winter." Lathrop then enquired of the plaintiff if that was all the change in his property. The plaintiff replied that it was. The assessor then said, " You take your oath that that is all, do you?" The plaintiff replied, " Certainly I do." This was the usual way in which most of the assessment lists were made and received by the assessors on the assessment of 1870. Lathrop had been assessor for five or six years immediately preceding, and for four or five of those years the list of the plaintiff had been made out, sworn to, and received by Lathrop, in the manner above stated. The plaintiff supposed that his list had been made out containing the same items as his list of the previous year, and had been sworn to and received by the assessor, and failed to make any other list than as above, or make any other oath to the same than as above. Lathrop thereupon did not make out any separate list for the plaintiff and add thereto ten per cent., but entered the assessment of the plaintiff upon the grand list of the town, assessing his property the same as it was assessed the year before, and also put on the grand list opposite the name of. the plaintiff, in pencil mark, the sum of $6,000, under the head of " money at interest. " There was no heading upon the grand list used of " money due," or " choses in action." The assessor did not make oath to the correctness of the grand list. He lodged the same with the town clerk, as by law provided, on the 15th day of December, 1870. The actual value of the real estate remaining to the plaintiff, after the portion taken by the railroad company had been transferred to them, was about $5,000. The property on the first day of October, 1870, was assessed as high proportionally as other real estate in the city of Middletown. The cost to the plaintiff of removing his buildings from the line of the railroad was $2,500.

In January, 1871, when the board of relief of the town met as by law provided, the assessment of $6,000 to the plaintiff was spoken of, and the same was approved by the board, but the item was not placed on the list by the board or by their order.

Arnold *v.* Town of Middletown.

The plaintiff had no notice, either from the assessors or the board of relief, that this sum of $6,000, or any other sum, was to be added to his list, or that it had been, nor any notice with reference to any change in his list from any source. He had no such sum of $6,000 at interest, or due him, or choses in action of that amount then taxable, except the $6,000 to be paid him by the railroad company, if that sum were then taxable, and had no other money at interest liable to taxation.

The defendants offered parol evidence to prove, and, if the evidence be admissible, did prove, that the sum so assessed as " money at interest " was in fact intended to cover the amount coming to the plaintiff from the railroad company, and paid over to the plaintiff as before stated.

Upon the plaintiff's list thus completed, including the $6,-000, a warrant was duly issued, and with the list and warrant the collector of the town, in the summer of 1871, called upon the plaintiff for the payment of his tax, when the plaintiff for the first time knew that the $6,000 had been added to his list. He then, and before the commencement of this suit, and before the levy of the warrant, offered to pay, and tendered to the collector, all of his tax, except that part so levied on the $6,000, which offer the collector refused, and threatened to levy his warrant either upon the person or property of the plaintiff. And upon the 2d day of April, 1873, the collector did levy his warrant upon the person of the plaintiff, and the plaintiff, while so under arrest, on the same day paid the whole of the tax so assessed against him, but paid the same under protest.

Upon these facts the case was reserved for the advice of this court.

*Calef* and *Chadwick*, for the plaintiff.

*Bacon*, for the defendants.

PARDEE, J. The plaintiff did not make oath to his list for 1870. Bouvier says of an oath that " it is a religious act by which the party invokes God not only to witness the truth

and sincerity of his promise, but also to avenge his imposture or violated faith." The conversation which passed between the plaintiff and the assessor meets none of the requirements of this definition.

The plaintiff having neglected to give in his list made and sworn to, the law made it the duty of the assessor to fill out a list for him, putting therein all *property* which he had reason to believe was owned by him, *liable to taxation.* This duty he undertook to perform, and included in the list, under the head of money at interest, the sum which the appraisers had awarded to the plaintiff by way of damages for the lay-out of the Connecticut Valley railroad, as detailed in the statement of facts.

By statute a railroad company may lay out a line for its road and cause an appraisement of damages occasioned to landholders by such lay-out to be made in writing. This writing must be filed with the clerk of the Superior Court in the county where the land lies, to be by him recorded, and this record is to have the effect of a judgment, and execution may issue at the end of sixty days from the time of such return, in favor of the persons respectively to whom damages may be appraised.

The statute also provides that, if after such lay-out and appraisement of damages the railroad company shall abandon or discontinue any part or branch thereof before the same shall have been opened and worked, no action shall be brought against the company for the recovery of such appraisement, by any owner of land over which the road had been laid out and discontinued.

Therefore during the period of sixty days next after the filing of the written appraisement in the clerk's office, the lay-out of the railroad and the consequent appraisement of damages are provisional and experimental acts only; it is within the power of the company to render both entirely void. During that period the plaintiff had no fixed debt or cause of action against the railroad company; nothing certain in the present; nothing certain to become due at any future time. He had only an expectancy; a possibility; and this

liable to be destroyed without or in spite of any act on his part.

In this case this period of sixty days included the first day of October, 1870, from which day the law of taxation speaks. All things are to be taken as they stand on that day; and on that day this appraisement of six thousand dollars in favor of the plaintiff against the railroad company was not, in the eye of the law, taxable property; he did not then own it; nor was it liable to taxation as against him. Therefore it was improperly placed in the list filled out by the assessor, as a basis for taxation. *Lowell* v. *Street Commissioners of Boston*, 106 Mass., 540.

We advise the Superior Court to render judgment for the plaintiff for the amount of the tax paid by him upon the item of six thousand dollars, and interest.

In this opinion the other judges concurred.