## CLINTON MINING & MINERAL CO. v. BEACOM. *

(Circuit Court of Appeals, Third Circuit.   July 13, 1920.)

No. 2543.

1. **Corporations ☞239—Liability of stockholders for debts does not include liability for tort; "debt."**

   In a South Dakota statute providing that each stockholder shall be individually and personally liable "for the debts of the corporation" to the extent of the amount unpaid on his stock, and be subject to suit therefor by a creditor of the corporation, the word "debts" does not include a liability of the corporation for a tort.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

2. **Corporations ☞253—Reduction of claim to judgment does not affect liability of stockholder.**

   In an action by a judgment creditor of a corporation against a stockholder to enforce his statutory liability for debts of the corporation, defendant may go behind the judgment, and his liability depends on the nature of the claim against the corporation on which it is founded, which gains nothing from the fact that it has been reduced to judgment.

3. **Words and phrases—"Debt."**

   The word "debt" carries with it the requirement of certainty, the foundation of promise by express contract, and necessarily implies legality.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action at law by the Clinton Mining & Mineral Company against J. S. Beacom. From a judgment of nonsuit, plaintiff brings error. Affirmed.

For opinion below, see 264 Fed. 228.

Arthur O. Fording, of Pittsburgh, Pa., and Martin & Mason, of Deadwood, S. D., for plaintiff in error.

Sterling, Higbee & Matthews, of Uniontown, Pa., and J. M. Hodgson, of Casper, Wyo. (E. C. Higbee, of Uniontown, Pa., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

BUFFINGTON, Circuit Judge.   [1] In this case, the Clinton Mining & Mineral Company, a corporate citizen of Iowa and a judgment creditor of the Imperial Gold Mining & Milling Company, a corporation of South Dakota, brought suit to recover from James S. Beacom, a stockholder of said company and a citizen of Pennsylvania, the amount of such judgment. The alleged right to recover was based on a statute of South Dakota (Rev. Code 1919, § 8779), which provides:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not fully paid the capital stock held by him, and in such action the court must ascertain the

amount that is unpaid upon the stock held by each stockholder and for which he is liable, and a several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation."

At the close of the plaintiff's proofs, the court below entered a compulsory nonsuit, and to its subsequent refusal to take off such nonsuit plaintiff excepted and sued out this writ of error.

By reference to the opinions of this court in cases involving the Clinton Mining & Mineral Company which opinions are reported in 247 Fed. 449, 159 C. C. A. 503, Clinton Mining & Mineral Co. v. Cochran et al. and 256 Fed. 577, 167 C. C. A. 607, Clinton Mining & Mineral Co. v. Jamison, and to the opinion of the court below refusing to take off the nonsuit, which is printed in 264 Fed. 228, we obviate a present restatement of the facts of the case. From these several opinions it will be seen the plaintiff's claim was for the tort or wrong of the milling company for a wrongful and intentional taking of ore from the plaintiff's property. Such being the case, we naturally inquire whether the liability for such tort by the milling company made such liability a debt of the company, within the purview of this statute. After full consideration, we are of opinion it did not.

The statute was technical in its subject-matter, its purpose was to make the stockholder directly liable to the person to whom the company was indebted, and its method was to subject him to an individual suit brought directly against him for the debt of the company. Such liability to such direct suit did not theretofore exist, and the purpose of the statute was to impose such new liability and direct the means and manner by and in which it was to be enforced. Such being the case, it will be seen that the statute is one in which law terms, terms with well-understood legal meanings, would be and were used. For example, the phrases "individually and personally liable," "may institute joint and several actions," "in such action the court must ascertain," and "several judgments must be rendered against each," are all technical words of distinct legal significance. We are therefore justified in expecting that, when these legal words and technical terms were necessarily used in the act to define the steps of procedure to enforce liability, legal words with like well-understood technical meaning would be used to define the undertakings or liabilities of the company, for which the stockholder was now to be made for the first time directly and individually liable. Now, in defining the status of the stockholder for which he was to be held liable, the single word used was "debts," "the debts of the corporation," and in legal nomenclature the word "debt" means liability for a sum certain, and that liability one created by contract.

[3] Blackstone, the master of exact legal definition, says:

"The legal acceptance of debt is a sum of money due by certain and express agreement" (3 Comm. 155), or "any contract, in short, whereby a determinate sum of money becomes due to any person * * * is a contract of debt" (2 Comm. 464).

In legal dictionaries defining the word "debt," the consensus of definition is to give the technical meaning of certainty of amount as the earmark of a debt, and to contrast its specific promise by contract, with the uncertainty of general words, such as "obligation," "liability," and the like. But not only does the word "debt" carry with it the requirement of certainty, and the foundation of promise by express contract, but it necessarily implies legality, since the basis of its obligation is legality based on promise and lawful consideration, and hence it will be seen that, a debt being in its nature certain, contractual, and lawfully incurred, it is reasonable that a statute should enact that a stockholder should be held liable for debts a corporation would properly and legally incur. From all of which it would clearly appear that both from the uncertainty and indefiniteness of uncontracted for liability, and from the illegality and wrong from which it arises, that a tort or wrong on the part of a corporation stands in a wholly different relation to a stockholder than does a debt with its certainty of contract and its legality of consideration.

The corporation has no right to commit such tort or wrong. When the stockholder subscribed for its stock, it was not with the purpose of creating an agency that should commit a tort or wrong. Such acts were not incident to purposes for which it was formed, nor was the liability for such wrong which inured to the one wronged thereby, a right for which the latter bargained in the course of what the corporation was impliedly authorized by the stockholder to do. On the contrary, the wrong done was a wrong illegally done by the corporation, not only to the third party, but a wrong done equally and illegally to its stockholder. Such being the case, he who would make the word "debt" in this statute a synonym for tort, and thereby impose liability on the stockholder, is giving the word "debt" an effect which usage does not warrant nor reason justify. We are therefore of opinion that the tort of which the milling company was guilty in unlawfully mining the plaintiff's ore, was not a debt of the tort-feasor corporation, for which its stockholders were made personally liable by this statute.

[2] Seeing, then, that the relation of the plaintiff and the tort-feasor, milling company, was not that of debtor and creditor, and no other relation than that of debtor and creditor being made by the act ground of a suit against the stockholder personally, the case resolves itself into the question: Does a suit by the plaintiff against the milling company for such tort and reduction of the money damage to judgment make such tort, when merged in judgment, one "of the debts of the corporation," for which a stockholder is made liable by the statute at the suit of "any creditor of the corporation." Bearing in mind that we must, within the four corners of this statute, find liability expressly imposed on the stockholder, and, seeing that no liability for the milling company's tort was by use of such term imposed on the stockholder, it is quite evident that the burden is upon the plaintiff to show warrant for imposing by implication a tort liability under the statute which the statute does not impose by express words. The decided trend of decisions, where analogous questions have arisen, is against this contention. In Louisiana v. Mayor of New Orleans, 109 U. S.

288, 3 Sup. Ct. 211, 27 L. Ed. 936, the Supreme Court considered the question of the city's liability for its tort in suffering a mob to destroy plaintiff's property. Suit for the tort had been brought, the amount of damage fixed by judgment, and the Supreme Court was asked to treat this judgment as a contract, and as such covered by the constitutional inhibition that no state shall pass any law impairing the obligations of contracts. This the court refused to do, and went back to the original ground of liability, saying:

"But, however considered, the imposition is simply a measure of legislative policy, in no respect resting upon contract, and subject, like all other measures of policy, to any change the Legislature may see fit to make, either in the extent of the liability or in the means of its enforcement. And its character is not at all changed by the fact that the amount of loss, in pecuniary estimation, has been ascertained and established by the judgments rendered. *The obligation to make indemnity created by the statute has no more element of contract in it because merged in the judgments than it had previously.*"

Applying the principle of decision in that case to the present, where, as here, the amount of the tort "in pecuniary estimation has been ascertained, and established by the judgments rendered," we may say that the liability of the milling company for the tort, having originally, as we have seen, had no debt, and therefore no contract liability on it—

"has no more element of contract in it because merged in the judgments than it had previously."

We refer to this single case as establishing the general principle of the duty of a court, even in a case where the liability is not penal, to go behind the liquidating judgment and ascertain the real nature of the liability and whether it is contractual; and finding such is the holding of this case, we do not deem it necessary to discuss other cases bearing on the subject, many of which are referred to in the lower court's opinion, simply confining ourselves to saying that in no case do we find anything to limit, in the present case, the application of the general principle of Louisiana v. Mayor of New Orleans, supra. Seeing, then, as we do, that it was the duty of the court below to go behind the liquidating judgment, to ascertain the nature of the original liability, finding, as it did, that liability was not one in debt, but in tort, and holding, as it rightly did, that such tort of the milling company was not a debt of that company, the judgment below must be and is affirmed.