### 14856. DEWEY *v.* DENSON, executor.

1. A writing partly in the form of a promissory note, but providing merely for the accrual of a right to the maker upon its payment, and containing a further stipulation, "that if said note is not paid on or before the date it becomes due, it shall thereupon cease to be a claim against the maker," does not create any obligation against the maker. He may exercise the option of paying it and of obtaining the right, or he may if he chooses decline to make the payment and thus lose the right. Whether the payment will be made is a matter within the choice of the maker.

2. Where the maker of such an instrument dies before its maturity, without removing the conditions therein existing in his favor, a provision in his will, by which his executor is directed to pay all just debts without unnecessary delay, cannot be construed as a direction for the payment of the sum of money mentioned in the instrument, which the maker might have paid or not at his choice, and does not bind his executor to pay.

3. In the present action by transferees of an instrument of the character above indicated against the executor of the maker, a judgment in favor of the defendant was proper.

DECIDED DECEMBER 7, 1923.

Complaint; from city court of Quitman—Judge Baum. June 23, 1923.

*Branch & Snow,* for plaintiffs.

*Bennet & Bennet,* for defendant.

BELL, J. Mrs. Julia Morton Dewey and Mrs. Cordelia Dewey Knight sued R. R. Denson, as executor of T. R. Denson, deceased, upon a "note" executed by T. R. Denson on March 7, 1921, and maturing on October 7th thereafter, payable to Maryland Life Insurance Company of Baltimore, for $150 principal, besides interest, and indorsed to the plaintiffs, upon which it was alleged that the defendant was "indebted." The defendant filed an answer, a demurrer to which was overruled. The trial proceeded before the court without a jury, upon an agreed statement of facts, and resulted in a judgment in favor of the defendant. The plaintiffs excepted. The demurrer is not referred to in their brief filed in this court, and is treated as abandoned. The only question for determination is, was the judgment in favor of the defendant authorized under the facts?

Mention of certain facts appearing in the agreed statement logically will precede a specific reference to the answer. On March 7, 1921, T. R. Denson held two policies of insurance, issued upon his life in favor respectively of the plaintiffs. The premiums were

$117.31 each, and were payable in advance at this time for the year immediately following. He paid the cash equivalent of $84.62, executing and delivering for the balance of $150 the so-called note on which the plaintiffs are suing. He died testate on August 17, 1921. His will, in which the defendant R. R. Denson was named as executor, was duly probated, and one of its items directed that all his "just debts be paid without unnecessary delay." The instrument sued on contained the following stipulations: "This note is accepted by said company at the request of the maker, together with dividend vouchers $20.82 and cash $63.80, on the following agreement: That policy No. 23481 and 42, issued by the Maryland Life Insurance Company of Baltimore on the life of T. R. Denson, shall be continued in force until midnight on the day on which said note is due, and upon the payment of said note and interest on or before said due date the said Maryland Life Insurance Company of Baltimore shall issue a receipt for the full annual premium of $234.62 due March 7, 1921, on said policy, which receipt shall be of the same force and effect as if said premium had been paid on the day due." "That if said note is not paid on or before the day it becomes due it shall thereupon cease to be a claim against the maker, and said policy shall thereupon automatically cease and determine, and said cash shall be retained by the said Maryland Life Insurance Company of Baltimore, as part compensation for the privileges herein granted, it being well understood that this agreement is made at the request and for the benefit of the maker of said note, and shall in no manner increase the liability of the said Maryland Life Insurance of Baltimore as set forth in said policy."

The insurance company required that the plaintiffs, the beneficiaries, should either pay the note or else allow the $150 therein mentioned to be deducted from the amount of the policy. They elected to pay the note and took a transfer or indorsement in form as follows: "In view of valuable consideration received, pay to Julia Morton Dewey and Mary Cordelia Dewey Knight, without recourse. Maryland Life Ins. Co. of Balto., by Geo. R. Kolb, Treas. & Comptroller." The defendant, in an amendment to his answer, set up "that the note sued upon is not a liability against the estate of T. R. Denson," because of the conditions therein contained and because T. R. Denson died before the maturity of the note without

23

having ever authorized any one to pay the note for him. Other parts of the answer set out certain provisions of the policies, but these, in the view of the court, are immaterial, with the exception of one in regard to grace, to which reference will be made in the opinion.

1. We do not think that the instrument sued on can be accurately referred to as a promissory note. However, for convenience, we will call it a note. It is not an unconditional promise to pay. It amounts in fact to nothing more than an agreement between the insured and the insurer by which the insured, in consideration of having paid the equivalent of $84.62 in money upon the annual premiums, aggregating $234.62, obtained an extension of the life of the policy to October 7, 1921, and the option then of continuing it in force according to its terms upon the payment of the additional sum of $150, representing the balance of the premiums which had accrued upon the previous March 7. It was entirely optional with the insured whether or not he would pay the further sum. If he elected not to pay it, the policy would automatically cease and determine on October 7, the date when the so-called note matured. Of course, the mere payment of the $150 on October 7 would not have kept the policy alive in the future, but it would have prevented its lapse for a failure to pay the premiums which had theretofore accrued. If he did elect to pay, the policy would be continued in force, unaffected by the fact that the payment of these premiums had been delayed; and whether it would lapse would depend upon compliance thereafter with the provisions of the policy. In any event the policy was kept in life by this agreement until October 7. If he had not desired a continuance of the policy beyond that date he was not required to pay the note. Inaction on his part would have been a sufficient election, because it was provided "that if said note is not paid on or before the date it becomes due, it shall thereupon cease to be a claim against the maker." It appears to be true, as alleged in the answer, that the maker "died before maturity of said note without having paid same, and that he never authorized any one to pay said note for him."

It should not be forgotten that the insured was not obliged to pay the premiums of $234.62 on March 7, the date of the note. These were required for the year immediately following, and the

policy could have been abandoned by the insured at that time. The company, however, gave him a chance to postpone his decision for seven months, in the meantime agreeing to keep him insured upon the payment of $84.62 in cash. This sum, with the grace of 31 days provided in the policy, would have kept the policy alive, even by its terms, until about the date of his death. The note really operated as an extension of the period of grace as applied to the unpaid portion of the premiums accruing on March 7, 1921. Calculation will demonstrate that the insured died at about the expiration of the period covered by the partial payment of $84.62 plus the 31 days of grace, and that the company did not actually carry the policy more than a day or so, if for any time, beyond a period for which it was compensated at the regular rates, with the period of grace added,—not the grace granted by the note, but that which was provided in the policy. Thus it will be seen that the insured did not actually get any considerable insurance, if any at all (we have not made an exact calculation), for which he did not pay, notwithstanding the note may never be paid, and the contention of the attorneys for the plaintiff in error that the note should be paid because of the insurance it procured is practically without substance. But regardless of that, the note was not an obligation unless the maker elected to so treat it.

While it is true that if the construction of a contract is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred, and that the law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached and that such was the intention of the parties (Civil Code of 1910, § 4268 (4); *Finlay* v. *Ludden,* 105 *Ga.* 264 (1), 267, 31 S. E. 180), the language of this instrument clearly does not impose any liability or obligation upon the maker. On the contrary, its unambiguous terms could have no other effect than to extend to him a privilege; it does not make him a debtor. The provision thereafter in his will, directing that his executor should pay his debts, could have no reference to this instrument.

A "debt" has been defined to be a sum of money due by a certain and express agreement. A debt in its general sense is a spe-

cific sum of money which is due or owing from one person to another, and denotes not only the obligation of one person to pay, but the right of the other party to receive and enforce payment by judicial action; it is that which one is bound to pay to or perform for another; that which one is obliged to do or suffer. 8 Am. & Eng. Ency. Law, 982; 2 Words & Phrases, 1864; 1 Words & Phrases (2d series), 1226.

The instrument sued on could not fall within the item of the will above quoted. The word "debt" as therein used should be taken in its ordinary acceptation. "A party making a contract is presumed to intend to bind his executors and administrators, unless it is of such a nature as to call for some personal quality of the testator, or is so worded as plainly to negative such a presumption." 11 R. C. L. 163, 173. But this contract called for a personal quality of the testator. It did not create an obligation upon him unless he chose to make it such, and whether the executor might have made the election to pay, it is sufficient to say that he has declined such election.

The paper, without more, could not have been enforced in the hands of the insurer, and, the conditions being written in its face, it does not become stronger in the hands of the plaintiffs. The court does not rule that the policy did not create a liability against the insured for all premiums as they matured. That question is not involved, for the reason that the only obligation sought to be enforced is alleged to inhere in the note.

The court did not err in rendering a judgment in favor of the defendant.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*