MARGUERITE ERIC ET AL., EXECUTORS (ESTATE OF HOWARD
ERIC) v. WALTER W. WALSH, TAX COMMISSIONER
OF THE STATE OF CONNECTICUT

SUPERIOR COURT          FAIRFIELD COUNTY          FILE NO. 68835

Memorandum filed October 15, 1947.

*Curtiss K. Thompson,* of New Haven, for the Plaintiffs.

*Frederick W. Dauch,* of Hartford, for the Defendant.

CORNELL, J. In the instant proceeding, plaintiffs, who are the executors of the will of the late Howard Eric, seek a review, under the provisions of General Statutes, § 1405, of the action of the defendant state tax commissioner (hereinafter referred to as "the commissioner") in including in the assessment of a penalty tax against the decedent's estate on March 15, 1944, under the authority of General Statutes, § 1403, an item in the sum of $2899.76. Eric deceased on November 28, 1941. When he died, he was a resident of and domiciled in Stamford in this state and had been for more than five years next prior thereto. The property involved, as it appears in the inventory of Eric's estate, filed by his executors in the Court of Probate for the district of Stamford, is thus described: "Indebtedness of Louis J. Drevers, resulting from liquidation of Eric & Drevers." Upon this, the appraisers appointed by the Court of Probate placed a valuation of $72,494.02. Admittedly, such an item had never been included in Eric's list for taxation in the town of Stamford in accordance with General Statutes, § 1147, nor had Eric, at his election, paid to the state the tax thereon prescribed by General Statutes, Cum. Sup. 1939, § 322e, in any year after the alleged indebtedness arose in October, 1938. The determinative consideration is, hence, whether the item in question was liable to be taxed under the provisions

of § 1147. *Lockwood* v. *Blodgett,* 106 Conn. 525, 530. That section, insofar as may be material here, reads as follows: "All notes, bonds and stocks, not issued by the United States, moneys, credits, choses in action . . . chattels . . . or any interest therein, belonging to any resident in this state, shall be set in his list in the town where he resides at their then actual valuation, except when otherwise provided by law . . . ."

The alleged debt is owed by one Louis J. Drevers. The latter and the deceased Howard Eric had been engaged together with others as copartners in the conduct of a stock brokerage business in the city of New York since 1910, under the firm name of Eric and Drevers. As of June 30, 1938, the copartnership was dissolved, owing to the depletion of its capital, which had become insufficient to enable it to meet its obligations. In this situation, Eric satisfied all its debts to third persons, Drevers being financially unable to contribute anything in this respect. This done, it was then determined that there was a deficit in Drevers' capital account of $486,301.35. On June 10, 1938, quite apparently in view of the impending dissolution of the copartnership, a limited partnership, pursuant to the provisions of article 8 of the partnership law of the state of New York, was formed, the terms of which were defined in a written instrument which provided that the business to be conducted by it should commence on July 1, 1938. This continued the business theretofore operated by the dissolved copartnership under the same firm name of Eric and Drevers. In this, Drevers, Edward Leo Nesbitt and George J. Theuer were general partners, and Eric a limited partner. Eric's capital contribution to the limited copartnership was $50,000. The participation of the general partners in the earnings of the business to be conducted by it were thus fixed: Drevers, 45 per cent; Theuer, 30 per cent and Nesbitt, 25 per cent. The liability of each of them to creditors of the concern was to be borne in the same proportions. Eric, however, as a limited partner was to have no share of the firm's profits but in lieu thereof was to be paid the sum of 5 per cent per annum on his contribution of $50,000, which income was guaranteed to him by the named general partners. He was exempted from any contribution toward the payment of losses over and above such principal sum. Other details need not be noticed for present purposes, except to say that such limited copartnership commenced operations on July 1, 1938, and has remained in business at all times material hereto.

On October 26, 1938, Drevers and Eric executed a written agreement in which, as amended on November 10, 1938, Drevers acknowledged his obligation to Eric, resulting from the dissolution of the original copartnership, in the sum of $481,301.35, and undertook to satisfy it "when and as soon as he is financially able to pay the same." Eric, on his part, agreed to waive all past accrued and future accruing interest thereon and not to attempt to enforce payment by legal process "until such time or times as Drevers is able to pay the same and to permit . . . Drevers to postpone payment thereof accordingly." It was further provided that: "The indebtedness as above described . . . may be paid in installments." When these undertakings were entered into, Eric and Drevers together and equally owned the following securities: 1000 shares, Callahan Zinc; 1000 shares, Coty; 5000 shares, Michigan Bumper; 200 shares, Universal Gear Shift, common; 200 shares, Universal Gear Shift, preferred; 344 shares, Chesapeake Trust; 4000 shares, Associated Gas Warrants; In another group, each had a $47\frac{1}{2}$ per cent interest (one Joseph Drasbar having the other 5 per cent.) These consisted of the following: 2000 shares, South American Oil Fields Inc.; 13,300 shares, Columbia Oil Concession; 4000 shares, Aire Mines; 100 shares, International Motors, preferred; 18-40/50 shares, Pierce-Arrow, common; 20,000 shares, St. Paul, common; 5000 shares, LaLasine; The certificates evidencing such stocks were in Eric's safe deposit box and held by him "as custodian," and so remained when he died. The agreement made between Eric and Drevers provided that these securities "may be sold by order of either party . . . or by their respective executors or legal representatives" and when sold the entire proceeds paid over to or retained by Eric, Drevers' share therein, as stated supra, to be applied in such case in reduction of his said obligation to Eric. In addition, there were three trading accounts with the firm of Cyrus J Lawrence & Sons in New York City, one carried under the designation of "Howard Eric T. R. Account"; another, "Howard Eric No. 39 Account"; and the other, "Howard Eric, B. D. K. Account." In each, there were a great many shares in various corporations. The entire interest in the two last mentioned accounts belonged to Drevers; in the first named, Eric and Drevers had each a one-half interest All had debit balances in October, 1938, in the following sums: On the first listed, $18,800; on the second, $42,800; and on the third, $56,600. Drevers in the agreement referred to authorized that his interest, as above

outlined, upon the liquidation of each of such accounts be applied toward the payment of his said liability to Eric. Of the three such acounts, two (that is, the No. 39 and B. D. K. accounts) were taken over by Cyrus J. Lawrence & Sons at the time the agreement of October 26, 1938, was made.

The objections urged by the plaintiff executors to the penalty tax imposed by the commissioner are directed to the (a) validity of such action, but if this is found not wholly illegal then (b) to the amount of such penalty. Those of the first mentioned type postulate that the contended indebtedness was not subject to local taxation in the town of Stamford by reason of the provisions of General Statutes, § 1162, which, insofar as material here, reads as follows: "The assessment list of any person need not include any money in any savings bank or in the savings department of any bank or trust company or any other property situated in another state, when it shall be made satisfactorily to appear to the asessors that the same is assessed and taxed in such other state to the same extent as other like property owned by any citizen of such state . . . ." It is the claim that the limited partnership formed in prospect of the dissolution of the original and which continued the business operated by the former under the same firm name was, in reality and for all practical purposes, the same enterprise, differing only in the identity of certain of its partners and the respective interests of the partners in its earnings and profits; and that, in any event, the business as conducted on the pertinent dates for local assessment in Stamford by the limited copartnership, like its predecessor general partnership, was located in the city of New York and taxable there.

It does not follow from such circumstances that the claimed indebtedness of Drevers to Eric had a business situs in New York. The contrary is indicated both by the origin and character of the obligation and the absence of factual basis upon which to found a conclusion that it was employed in the operation of the business either under the former or later copartnership. " . . . in order to constitute business situs 'there must be a continuous or permanent business in the state in which it is sought to establish the *situs*' and . . . the property employed 'must be localized in some independent business so that its substantial use and value primarily attach to and become an asset of a business outside the State of the owner's domicil and

constitute, as it were, the subject matter or stock in trade of that business.' " *Hackett* v. *Bankers Trust Co.*, 122 Conn. 107, 114; *Manufacturers Trust Co.* v. *Hackett*, 118 Conn. 101, 107. Obviously, since the claimed indebtedness did not arise or was not ascertained until the dissolution of the original partnership in June, 1938, it could not have constituted an asset of its business or have been otherwise used by it in that connection. Even if, though the stipulation does not purport so to state, the assets of the old partnership somehow passed to its successor, it would not follow that the liability of Drevers to Eric accompanied them. This was not an asset of such partnership business as an entity put the personal obligation of Drevers to Eric, arising, not out of the dealings of the concern with its customers or the public generally, but originating in the personal relations of the two. As respects the later limited copartnership, the facts do not show that the claimed debt formed any part of Eric's contribution to the capital of same or was ever transferred, loaned or otherwise dedicated to its use. More pointedly, it does not appear that it at any time constituted "the subject-matter or stock in trade" of the business conducted by it. *Hackett* v. *Bankers Trust Co.* supra. The stipulated facts furnish no basis upon which it could be permissibly determined that the alleged indebtedness acquired a business situs in New York.

Even if the claimed chose in action became an asset of the limited copartnership of Eric and Drevers and the other conditions necessary to confer a business situs in New York upon it were present, still it would not come within the exemption afforded by § 1162, supra. The tax contemplated by § 1147 is on specific items of property, e. g., a particular bond, note, credit, etc. The facts stipulated, however, repudiate the existence of any tax of this character in New York on the pertinent assessment dates in Connecticut: "Under the laws of the State of New York, personal property there situated, whether tangible or intangible, and whether owned by a resident or non-resident of such state is not subject to taxation." The effect of this circumstance is not altered by the further proffered stipulation that in New York "a similar and equal tax is imposed on the earnings and profits of non-residents of New York in business or employed therein and that the earnings and profits of the copartnership of Eric and Drevers were actually taxed in that state." An income tax is not one on specific property but a personal charge against the taxpayer measured by his income. 47 C. J. S. 219, § 93. See *McKesson & Robbins, Inc.* v. *Walsh,*

132 Conn. 158; *Anastasio* v. *Gulf Oil Corporation*, 131 Conn. 708, 716. As it does not appear that Drevers' liability to Eric was subject to assessment and taxation in New York, "to the same extent as other like property owned by any citizen of such state," or at all as specific items of personal property, the exemption provided by § 1162, supra, does not apply.

The other ground ("b" supra) urged in attack upon the penalty imposed concedes, hypothetically, that the item was subject to taxation in the town of Stamford but contends that the amount of ·the penalty fixed by the commissioner is excessive. This claim proceeds on the following facts: In arriving at the value assigned to the item in the inventory, the appraisers added to Drevers' net worth ($6599.10) the value of the unsold securities referred to supra, namely $65,894.92, and thus determined the figure of $72,494.02. It is the contention that such securities were not choses in action but choses in possession and therefore not taxable. It is asserted on this reasoning that such sum should not have been included in the tax base. It may be noted in passing that the subject of valuation was the alleged indebtedness of Drevers to Eric, not the securities in question. The latter entered into consideration, not as items of valuation in themselves, but only, according to the theory adopted, as they affected the value of the property to be taxed, that is the alleged indebtedness. The statute under the authority of which the commissioner acted in computing the amount of the penalty tax requires that the same be assessed at the rate of 2 per cent per annum for not exceeding five years "on the appraised inventory value" of the untaxed property. The assessment so made by the commissioner is not a tax on specific property according to its "true and just value," such as is the case when property is locally assessed, but a penalty for failure to list it for taxation or, in the alternative, to pay to the state the tax provided for in § 322e, supra. *Lockwood* v. *Blodgett,* 106 Conn. 525, 529; *Bankers Trust Co.* v. *Blodgett,* 96 Conn. 361, 366. It is not the compulsory payment of a defined tax but the infliction of a punishment for the violation of a public duty. In consequence, the penalty imposed may or may not represent what the deceased would have been required to pay had he paid the local or state tax. *Bankers Trust Co.* v. *Blodgett,* supra, 367.

Having determined that Eric's estate was liable to the tax prescribed in § 1147, the commissioner had no power to inquire into or determine on his own initiative or according to his own

estimate the value of the property involved to which the penalty of 2 per cent per annum for the appropriate number of years was to be applied. Nor has this court, under the provisions of the applicable statute, namely § 1405. While this section confers power on the Superior Court, when a review in the nature of an appeal is preferred to it, to determine whether the plaintiff is aggrieved by the action of the commissioner in assessing the "amount of such tax" (§ 1405), that court may grant relief only as the "amount" is affected by a determination that it includes (§ 1403) property upon which "a state, town or city tax has been paid . . . or that the ownership of such property has not been in the decedent for a portion of [the five year] period." When the property under inquiry is found to be taxable but was not taxed locally or by the state, the valuation upon which the penalty is to be fixed is and can only be that which appears in the inventory on the estate filed in the Court of Probate.

The stipulated facts reveal, however, other grounds that require the conclusion that the alleged "indebtedness" was not liable to local taxation in either 1939 or 1940. This for the reason that it was not then a credit or other chose in action within the meaning of the pertinent statute (§ 1147). "A debt is that which one . . . is bound to pay to another or to perform for his benefit; that of which payment is liable to be exacted . . . It contemplates not only an obligation upon the debtor to pay, but a reciprocal right on the part of the creditor to enforce payment by appropriate proceedings." *Guilford-Chester Water Co. v. Guilford,* 107 Conn. 519, 529; *Lenox Realty Co. v. Hackett,* 122 Conn 143, 146, 107 A. L. R. 1306; *Georgia Power Co. v. Davis,* 43 Ga. App. 791, 794; *Dewey v. Denson,* 31 Ga. App. 352, 356; *Angola Brick & Tile Co. v. Millgrove School Township,* 73 Ind. App. 557, 561. "Indebtedness is a state of being in debt and a debt is defined to be 'that which one person is bound to pay to another;' or an 'obligation'." *Lenox Realty Co. v. Hackett,* supra. Ordinarily, to be classified as a "debt" an obligation must be enforceable by resort to appropriate legal proceedings. *Guilford-Chester Water Co. v. Guilford,* supra; *Lenox Realty Co. v. Hackett,* supra; *Georgia Power Co. v. Davis,* supra, 794; *Dewey v. Denson,* supra, 356. A liability not enforceable by ordinary process is not a debt. *Davenport v. Kleinschmidt,* 6 Mont. 502, 536. A debt is a liquidated (*Trimount Dredging Co. v. Rhode Island Hospital Trust Co.,* 53 R. I. 55, 57), as distinguished from an unliquidated, demand. *Browning-Ferris Machinery Co. v. Thomson,* (Tex Civ. App.)

55 S. W. (2d) 168, 170; *Georgia Power Co.* v. *Davis,* supra. In consequence, liability for tort, for example, is not a debt (*Clinton Mining & Mineral Co.* v. *Beacom,* 266 F. 621, 623, 14 A. L. R. 263) and "a cause of action sounding in tort is not 'property' " so as to be liable to taxation as such (*Seward County* v. *Jones,* 105 Neb. 705, 708); nor is a mere claim for damages for violation of a contract not reduced to judgment. *Commonwealth* v. *Travelers Ins. Machine Co.,* 181 Ky. 596, 597; 2 Cooley, Taxation, (4th Ed.) p. 1240, § 574.

The "indebtedness" involved in the instant proceeding meets the requirement of being liquidated in amount, but the obligation to pay it is contingent. While it is said that an obligation to pay a debt may be presently due or contingent, yet until such contingency has occurred it does not become a debt. *Lowery* v. *Fuller,* 221 Mo. App. 495, 503; *Gilman* v. *Commissioner of Internal Revenue,* 53 F. 2d. 47, 50, 80 A. L. R. 209; *State ex rel. Hannibal* v. *Smith,* 335 No. 825, 835; *O'Connor* v. *Lape's Estate,* 110 Vt. 217, 220; *Comfort* v. *Tacoma,* 142 Wash. 249, 256. The distinction between a liability" and a "debt" as these terms are herein used is illustrated in the following cases: *Irving Bank-Columbia Trust Co.* v. *New York Railways Co.,* 292 F. 429, 433; *Clinton Mining & Mineral Co.* v. *Beacom,* supra; *Lowery* v. *Fuller,* supra; *State* v. *Board of Trustees,* 91 Mont. 300, 307; *State* v. *State Highway Commission,* 89 Mont. 205, 211; *Davenport* v. *Kleinschmidt,* supra; *Plymouth Township* v. *Borough of Larksville,* 268 Pa. 45, 50. Until the contingency eventuates, it is a liability, only, and, so far as it partakes of any semblance of a debt, is merely inchoate and contingent. *Gilman* v. *Commissioner of Internal Revenue,* supra; *State ex rel. Hannibal* v. *Smith,* supra. Whenever it is uncertain whether anything will ever be demandable by virtue of the contract, it cannot be called a debt. *Gilman* v. *Commissioner of Internal Revenue,* supra; *State ex rel. Hannibal* v. *Smith,* supra; *Santa Fe* v. *First National Bank in Raton,* 41 N. M. 130; *Sharpe* v. *First National Bank of Antigo,* 220 Wis. 506, 509. The same principles apply in the instance of statutes dealing with taxation of personal property which authorize the deduction of "indebtedness." It is quite uniformly held that the word "indebtedness" as so employed excludes contingent or conditional obligations. *Beecher* v. *Common Council of Detroit,* 110 Mich. 456, 457; *People ex rel. National Surety Co.* v. *Feitner,* 166 N. Y. 129; *People ex rel. Butterick Publishing Co.* v.

*Purdy,* 153 App. Div. 665; but see *People ex rel. Butterick Publishing Co.* v. *Purdy,* 207 N. Y. 771.

Within the principles stated, the claimed "indebtedness" involved here was a mere acknowledgment of a liability on Drevers' part since it conceived payment of the obligation only on the happening of a contingency that might never occur, namely, if and "when and as soon as he (Drevers) is financially able to pay the same," until which time, if it ever eventuated, Eric undertook to refrain from any attempt to enforce payment. It was the obligation with these conditions attached to it, for the failure to list which for local taxation or to pay the tax due the state under such circumstances that the commissioner imposed the estate penalty tax which is the subject of controversy. The circumstance that the contract conferred the right (1) on Drevers to make installment payments, and (2) on either Drevers or Eric to sell the securities or to appropriate any credit balance in the trading accounts upon the sale of some or all of the stocks contained therein does not alter the essentially conditional and contingent character of Drevers' engagement. As concerns (1) there was no obligation imposed upon Drevers to pay anything on account of what he owed Eric and in consequence, of course, no specification of the amount of any payment or the time or times when the same was to be made. That provision connotes only a privilege extended to, not a duty imposed on, Drevers. As respects (2) there is a like absence of any requirement that the securities in question be realized upon at any fixed time or at all. The agreement merely authorizes either Drevers or Eric to liquidate them on any occasion either of them might see fit, in which event Drevers' interest in the sum or sums so obtained should be retained by or turned over to Eric to be applied in reduction of what Drevers owed him. When, or if ever, this might occur was apparently dependent, first, on the eventuation of what either of the parties might consider propitious conditions and, second, upon the actual decision of one or both of them to act—contingencies the occurrence of which might never take place.

If such securities and equities in the trading accounts may be considered as between the parties as in the nature of a pledge, it does not ensue that for that reason the obligation was a debt, since a pledge may also be made to secure contingent liabilities. 49 C. J. 903, § 22. In such case, the terms of the pledge could not be effective to vary the nature or legal effect of the liability

it was intended to secure in whole or in part. "As a general rule the delivery of a pledge does not affect the rights of the parties under the contract or obligation it is given to secure, except as the pledge contract provides for additional security, or as the parties contract by special agreement." 49 C. J. 921, § 53. Neither of such exceptions to the general rule stated obtain here. It is clear, too, that under the agreement, notwithstanding any installment payments that may be made by Drevers or the application of the proceeds of any sale of the securities mentioned or realized from the conversion of stocks in the brokerage accounts, the balance would be payable only when and if Drevers' fortune, as derived from all sources, improved to the point where he would be "financially able to pay same." The provisions mentioned are equally as contingent on occurrences that may never come to pass as is the principal obligation and in any event are impotent to vary the latter.

Whether or not property is taxable in towns, cities or other political subdivisions is to be determined with reference to its status in that respect on the first day of the period fixed by law for the filing of assessment lists. Arnold v. Middletown, 41 Conn. 206, 211. This, in the present instance, was the first day of October in the years 1939 and 1940. From the foregoing, it is evident that the claimed indebtedness of Drevers to Eric on both of such dates was that of a liability which could become payable only on the happening of a contingency which might never occur. Under the authorities cited supra, it was not liable to taxation in either of the years mentioned since it was not a debt or other chose in action on either of such dates. Arnold v. Middletown, supra, 210. As to whether or not without the agreement of October 26, 1938, which materially changed the character of the obligation from what it was immediately upon the dissolution of the partnership, the amount owing by Drevers to Eric would have been taxable, no comment is made due to the paucity of the facts in the stipulation bearing on that question. If the conditions which then existed were such as to show that the amount then owing represented a loss to Eric, quaere whether the same could be considered a credit or other chose in action within the meaning of § 1147, supra.

### MEMORANDUM de JUDGMENT

The Memorandum of Decision in the above entitled cause filed on October 14, 1947 is hereby amended by adding thereto a final paragraph to read as follows:

The appeal is sustained. Judgment will enter that the item designated as "Indebtedness of Louis J. Drevers" in the assess-ment and computation of the estate penalty tax on the Estate of Howard Eric, dated March 15, 1944, be eliminated from the same and the total tax therein assessed and computed be re-duced from the total of $3896.01 to the sum of $999.25.